## Lyons *versus* Divelbis.

1. The statute of 3 & 4 Anne, ch. IX., distinguishes between the *endorsement* and *assignment* of a negotiable note, and authorizes the holder by either mode of transfer to bring suit in his own name against the *maker* or *endorser*. No action is given by it against *the assignor*.

2. An *assignment* of a promissory note transfers to the holder the rights of the assignor; the assignor being responsible for nothing more than the genuineness of the claim.

3. On an endorsement on an overdue negotiable note to the effect, " I assign the above note to J. D.," there is no resort for indemnity against the insolvency of the maker.

4. Though the words " *without recourse*" in connection with such an assignment were stricken out, the holder being unwilling to take the note otherwise, the *assignor* saying " he did not know it would make any difference:" *Held,* that the erasure, under such circumstances, did not amount to a contract of guaranty.

5. When the assignment of the overdue note was made, it was agreed that the assignee was to take *iron* from the drawer to the amount of the note, and to go after the iron the next day, and if it were not received, the note was to be returned to the assignor immediately: It was *Held,* that as the assignee did not conform to the terms of the agreement, he was not entitled to recover from the assignor.

6. The transfer of the said note by the assignee three days after he received it—the commencement of a suit by the then holder against the drawers about three months afterwards—the recovery of judgment and execution returned " no property found," did not amount to "a compliance with the said agreement.

7. It appearing *by the record* that the verdict was entered for the plaintiff *pro forma,* with leave to the Court to enter judgment for the defendant, *non obstante veredicto: Held,* that the statement of the judge, in his opinion afterwards filed, that certain matters were " taken into view and passed upon at the trial," is not receivable to contradict it.

8. The brief statement, *in the judge's notes,* of the question reserved, was also ineffectual to contradict the record.

9. The reservation of a point without a statement of the facts upon which the question arises, and without stating the judgment to be given upon their solution, is irregular.

ERROR to the Common Pleas of *Fayette county.*

This was an appeal from the judgment of a justice of the peace, in a suit brought by Johnson Divelbis *v.* John A. Lyons, on an alleged guaranty of a note, as follows:

" Monongalia Iron Works, 28 Nov., 1846

" Six months after date the Monongalia Iron Co. promise to pay to the order of Mr. John A. Lyons, forty-nine dollars and fifty-six cents.

" For the Company,　　　　　　　　　E. T. ELLICOTT."
Endorsements thereon viz:

[Lyons *v.* Divelbis.]

"Sep. 23, '47.—I assign the above note to Johnson Divelbis, ~~without recourse.~~                                       JOHN A. LYONS."
"Sep. 26, '47.—I assign the above note to John Hagen.
"JOHNSON DIVELBIS."

The first plea entered was *non assumpsit.*

It was stated in the paper-book, on part of the plaintiff in error, that, on the trial, the plaintiff proved the assignment by the defendant, and offered the record of a suit, brought on 11th December, 1847, in Virginia, on the said note, for the use of John Hagen, against the Monongalia Iron Co. : judgment obtained on 28th June, 1848, execution returned "no property found."

It appeared that the words *without recourse* had been written after the name of Johnson Divelbis in the assignment, but had been stricken out.

It was alleged on part of the plaintiff in error, the *defendant below,* that the defendant, on the trial, showed that, at the time of the assignment, the plaintiff knew that the Monongalia Iron Works were not paying *money,* but were delivering *iron* for their debts, presented ; that the iron would have suited Divelbis as well as the money ; that he was to send on the next day for the iron, and that if he did not get the iron he was to return the note ; that, instead of sending for the iron, on the third day after he got the note he assigned it to John Hagen, who afterwards brought suit against the company. Also, that the company, at the time of the assignment of the note, and for some months afterwards, delivered iron for all claims against them presented.

It was stated on the same paper-book, that, under such state of facts, it was contended that the plaintiff was bound to return the note if not paid ; and that even in the absence of any such agreement, Lyons, the defendant in the suit, was entitled to notice that the company had failed to pay, upon reasonable demand having been made.

On part of *the plaintiff in the suit,* the deposition of M. S. Miller was read, who said that the words "without recourse" were stricken out by Lyons, because plaintiff would not receive the note otherwise.

Alexander Patten was examined on part of the plaintiff.—He said that Divelbis handed the note to him, and asked what he thought of the assignment,—Lyons's name was then to the assignment. Divelbis said, in presence of Lyons, "I made him fix it, for I would not have it without recourse back. Lyons said he did not know it would make any difference."

*On part of defendants,* testimony was given that Divelbis, before he got the note, knew that the Ellicotts were not paying *money,* but were delivering iron for claims against them.

[Lyons v. Divelbis.]

J. Tedrick was then examined, and testified that he was present when Divelbis traded a wagon to Lyons for the note; that Divelbis said he would go the next day and get the iron; and that Lyons told him if he did not get the iron, he was to return the note immediately.

Another witness, Llewellyn, testified that Divelbis told him he was going to take the amount of the note in iron.

The verdict was entered *pro forma*, with leave, &c., and judgment was subsequently entered for the plaintiff. The opinion of GILMORE, J., afterwards delivered, was as follows:

"The question reserved for the consideration of the Court was, whether it was necessary that the plaintiff should show *reasonable demand, and notice to the defendant*." * * * * * * * *

"It is now settled by a recent case, Patterson *v.* Todd & Lemon, 6 *Harris* 426, that the endorser of a negotiable note overdue is not liable, unless the note be presented to the drawer for payment within a reasonable time after its transfer, and if not paid, notice of non-payment given to the endorser. The undertaking of the endorser is, that if the drawer does not pay on demand, made in proper time," and notice of this be given, he will pay. "The nature of the undertaking in this respect is not altered, although the note is endorsed when overdue. It is not an independent original undertaking, as some suppose, but subject to the above stated conditions. But this is an assignment, and if the assignor is liable at all, it must be on an undertaking in the nature of a guaranty; in which it is only necessary to show either that an attempt had been made to collect it, or that through the insolvency of the drawer it could not be realized. These were matters which were all taken into view, and passed upon at the trial. The Court therefore direct judgment to be entered on the verdict for *plaintiff* on payment of jury fee."

It was stated *on the record* as follows:

"March 14, 1853.—Jury sworn. Defendant adds the pleas of payment, and payment with leave, &c.: tried, and verdict for plaintiff for $66.74 cents, *pro forma*, with leave to the Court to enter judgment for the defendant, *non obstante.* June 18, 1853, argued. June 23, 1853, opinion of the Court filed. Judgment for plaintiff."

*On the judge's notes* it was stated, viz.: "The question made by defendant, that defendant was entitled to notice that the drawer failed to pay—reserved, and verdict, in case it should be for plaintiff, to be entered *pro forma*, with leave, &c."

It was assigned for error, that the Court erred in deciding that this was *an assignment*—that it was not governed by the same

[Lyons *v.* Divelbis.]

principles of law which apply to *endorsements.* 2. In stating that this was a case of *guaranty,* and that an attempt to collect the money several months after the assignment was sufficient to entitle the plaintiff to hold the defendant. 3. In directing judgment to be entered for the plaintiff.

*Patterson,* for plaintiff in error.—It was said that if *this* were the case of an *endorsement,* the endorsee could not recover as it was not shown that the note was presented to the drawer for payment and notice given of its dishonor. But in the case of a guaranty, the rule is not equally strict, and when there has been no presentment or notice of dishonor, the liability of the guarantor will depend upon the question as to whether the want of notice occasioned him loss : *Story on Pro. Notes,* sec. 460 ; 1 *Jones* 460. The liability of a guarantor depends upon the evidence in the case. The Court charged that in order to recover, it was necessary to show only that an attempt had been made to collect the note, or that by reason of the insolvency of the maker, it could not be collected. But it was contended that in this case the testimony was, that the endorsee was *to take iron* for the note, and that it was to have been presented on the next day, and, if not honored, the note was to be returned. Even though there had been no agreement to return the note, if there had not been due diligence to secure the claim, and give notice if it were not met, and by this means the claim was lost, the defendant was not liable *even if he were a guarantor.* It was said that in this case the defendant was not *a guarantor,* as he had not entered into a covenant to be surety for the payment of the claim.

*J. B.* and *A. Howell,* for defendant in error.—It was contended that this was not a mere *endorsement,* nor simply an assignment of the note ; but that the defendant, when he assigned, agreed to guaranty its payment, and that this appeared from the testimony in the case. The contract of *endorsement* may be converted by parol evidence into an absolute and unconditional engagement to pay ; 6 *Harris* 426, Patterson *v.* Todd & Lemon ; and the contract of *assignment* may, in the same way, be shown to be an agreement to guaranty the payment of the note. A guarantor is bound to inquire and see that the note is paid. It is not necessary for the holder to give him notice of its non-payment : 9 *Ser. & R.* 199 ; 4 *Watts* 418 ; 1 *Barr* 501. It was contended that the jury had determined from the testimony and from *all the facts of the case* the liability of the defendant, and their decision should not be reviewed in this Court. It was further said that the *charge to the jury* is not here—*that* on the paper-book is what was said

[*Lyons v. Divelbis.*]

by the Court in entering judgment. It was added: "After the jury were charged and had retired, the question was made, 'whether it was necessary that plaintiff should show reasonable demand and notice to the defendant.' *That* question was reserved for the consideration of the Court." It was said that it was on the decision of the Court below upon such reserved question that this Court have to pass, and upon no other.

The opinion of the Court was delivered by

LEWIS, J.—Every endorsement of a promissory note includes in it an assignment, but an assignment is not necessarily an endorsement. The statute of 3 & 4 Anne, chapter ix., distinguishes between the two methods of transfer, when it authorizes the holder, whether by *endorsement* or *assignment*, to bring an action in his own name against the *maker*, and *endorser*. No action is given by the statute against the *assignor*. An endorsement is an authority to the holder to write over the signature an order upon the maker, in the nature of a bill of exchange. It is a commercial transaction, and the law merchant fixes the measure of liability, as in bills of exchange. An assignment of a *chose in action* is in strictness unknown to the common law. It is, however, recognised in equity, and transfers to the holder the rights of the assignor, at a price presumed to be no more than equal to the value of the claim against the maker, taking into consideration his character for punctuality, and his ability to pay. On such a transfer the assignor is responsible for nothing but the genuineness of the claim. The instrument on which this action was brought, is a transfer of the description last mentioned, written upon a note overdue at the time. On this there is no resort for indemnity against the insolvency of the maker.

It appears, by the evidence, that the assignment was written, in the first place, with the words "without recourse" embodied in it; but these words were afterwards erased by consent of both parties, because the assignee was unwilling to take it in that form, and the assignor believed that it "made no difference" whether the words were erased or not. The erasure, under such circumstances, is not a contract of guaranty. If that had been the intention of the parties, it was easy for them to express it. The omission to do so shows that each party relied either upon the legal effect of the assignment, or upon some collateral agreement, susceptible of proof independent of it. The evidence that the note was taken under a special agreement that Divelbis was to "go the next day to get iron for it, and if he did not get the iron, that he was to return the note *immediately*," explains the reason for erasing the words "without recourse," and shows that in doing so, the parties

[Lyons *v.* Divelbis.]

only intended to avoid introducing into the writing anything inconsistent with their parol contract.    As there is no evidence of any other contract of guaranty than that stated in the testimony of Tedrick and Llewellyn, and as the plaintiff below did not conform to the terms of that agreement, he was not entitled to recover. The transfer of the note by Divelbis to John Hagen three days after the former received it—the commencement of a suit against the maker on the 11th December, 1847, nearly three months afterwards—the recovery of a judgment nine months after the transfer, and an execution returned "no property found," do not amount to a compliance with the agreement to call on the maker for iron *the next day* after the note was received, and if the iron was not obtained, to return the note *immediately.*

It appears by the record that the verdict was entered "for the plaintiff *pro forma,* with leave to the Court to enter judgment for the defendant *non obstante veredicto.*"   In this state of the record the judge's statement, in his opinion afterwards filed, that certain matters were "taken into view and passed upon at the trial," cannot be received to contradict it.   If the verdict was entered *pro forma,* we do not see what power the jury were permitted to exercise over the case.   It is plain, from this entry, that they exercised none ;  and the imperfect statement, of the question reserved, taken from the judge's notes, is equally ineffectual in contradicting the record.   The reservation of a point without a statement of the facts upon which the question arises, and without stating the judgment to be given upon its solution, is irregular and dangerous to the rights of the parties.   In this case, judging from the entry on the record, the parties appear to have dispensed with the services of the jury, and to have submitted the whole case to the judgment of the Court upon the evidence.   Upon that evidence, as stated in the paper-book, we are of opinion that the defendant below was entitled to the verdict and judgment.   Under the reservation made at the trial, it is therefore ordered that the judgment of the Court below be reversed, and that judgment be entered for the plaintiff in error, *non obstante veredicto,* with costs.

Judgment accordingly.