HIRAM J. PALMER ET AL. V. FRANK COURTNEY.

[FILED SEPTEMBER 16, 1891.]

1. **Negotiable Instruments:** UNDERTAKINGS OF INDORSER
WITHOUT RECOURSE. An indorser of a promissory note "without recourse," for value, contracts and engages that the signatures
borne by said note as makers, or prior indorsers, are the genuine signatures of the persons thereby represented, and that such
note is their valid obligation.

2. **The evidence** examined, and *held*, sufficient to sustain the verdict.

3. **Instructions** considered, and *held*, rightly given.

ERROR to the district court for Hall county. Tried
below before HARRISON, J.

*Thummel & Platt*, for plaintiffs in error, cited: *Welsh v.
Lindo*, 1 Cranch [Dist. Col.], 497; Chitty, Bills, 268;
Byles, Bills, 266; *Upham v. Prince*, 12 Mass., 13; *Borden v. Clark*, 26 Mich., 410; *Fassin v. Hubbard*, 55 N.
Y., 465.

*J. W. Bartholomew*, and *W. A. Prince*, *contra*, cited:
*Tallon v. Ellison*, 3 Neb., 74; *Faulkner v. Klamp*, 16 Id.,
178; 1 Daniel, Neg. Inst., sec. 670; 2 Randolph, Com.
Paper, sec. 720; 3 Greenl., Ev., sec. 109.

COBB, CH. J.

This action was brought in the district court of Hall
county by Frank Courtney as plaintiff against Hiram
Palmer and William S. Dickason, defendants. It is alleged by the plaintiff in his amended petition that on or
about the 2d day of March, 1888, a certain person representing himself as J. E. Johnson, whose real and true name
is unknown, made and delivered to Hiram J. Palmer, one

of the defendants, a certain promissory note for $95, payable October 1, 1888, with interest at ten per cent from date until paid, waiving demand, notice, and protest both on the part of the maker and indorsers thereof; and on the same date, to secure the payment of said note, executed and delivered to said Palmer a chattel mortgage on eighteen head of cattle, copies of said note and mortgage being attached to said petition. That at the time of the making and delivery of said note and mortgage, the maker thereof represented that he was living three or four miles north of the village of Wood River, Hall county Nebraska, and that said mortgaged property was in his possession and kept by him at his place of residence aforesaid; that on or about the 10th day of July, 1888, said Palmer came to plaintiff and represented that William S. Dickason, meaning the said defendant of that name, had a good and genuine note secured by a good and genuine chattel mortgage on and covering eighteen head of cattle, and that the maker of said note and mortgage at that time was residing three or four miles north of the village of Wood River, which said note and mortgage are the same and identical note and mortgage set out in and made a part of said petition, and the same identical note and mortgage traded by defendants to plaintiff as thereinafter set forth ; and that said Hiram Palmer further represented that said Dickason was desirous of exchanging said note and mortgage for a horse; that said Palmer repeatedly declared that said note and mortgage were good and genuine, and by his representation induced said plaintiff to believe said note and mortgage good and genuine and worth the face value thereof with accrued interest, whereas at the time of such representations said Palmer well knew that said note and mortgage were worthless for causes in said petition thereinafter set forth; that, influenced by the representations of said defendants as to the value of said note and mortgage, plaintiff entered into an agreement with said Dickason to exchange a horse

of the value of $100 for said note and mortgage, and said exchange was thereupon made on or about the 10th day of July, 1888, long before said note was due, said note having been indorsed by said Hiram Palmer as follows : " Without recourse on me," and that said note and mortgage exchanged by said William S. Dickason to said Frank Courtney for said horse were the same and identical note and mortgage before described in said petition; that said note and mortgage were fraudulent, fictitious, and forged ; that no person named J. E. Johnson lived three or four miles north of the village of Wood River aforesaid; that due and diligent research and inquiries have been repeatedly and on different occasions made throughout Hall county which have wholly failed to discover either the identity of the maker of said note and mortgage or the existence of the maker's property, or any part thereof; that at the time of the making of said note and mortgage, and also at the time of the exchange of said note and mortgage for said horse, the said William S. Dickason was the agent, and acting as such, of the said Palmer, and at the time of the exchange of said note and mortgage for said horse the above named defendants conspired willfully and maliciously to cheat and defraud said Frank Courtney of said horse; that said Palmer for the purpose of deceiving, represented said note to be owned by said Dickason, to be a good and genuine note secured by a good and genuine mortgage ; the said Dickason also represented said note to be good and genuine, whereas at the time of the exchange of said note and mortgage for said horse, said Palmer had made due and diligent inquiry, personally and by agents, and from such inquiries well knew that said note and mortgage were fraudulent, fictitious, and forged; that the maker of said note and mortgage could not be found ; that the mortgaged property nor any part thereof was at that time, nor ever had been seen, in Hall county, and knowing this, the defendants falsely and fraudulently represented to said plaintiff, for

the purpose of deceiving, that said note and mortgage were good and genuine, and that it was these false representations which induced said plaintiff to exchange said horse for said note and mortgage, and by this exchange said plaintiff was cheated and defrauded of said horse; that when said note became due, plaintiff made due and diligent research to find the maker thereof, and also to find the said mortgaged property, but was unable to discover either, and for these reasons, and because said note and mortgage were fraudulent, forged, and ficticious, said note and mortgage are wholly worthless and that no part of said note has ever been paid; that the value of said horse at the time of the exchange thereof for said note and mortgage was $100; that both plaintiff and defendants estimated said horse to be well and truly worth the aforesaid sum; that plaintiff is now the owner of said note and mortgage, and that the said note and mortgage are long past due and wholly unpaid, with demand for judgment.

The defendants filed their joint answer in said cause, in which they admit that said Palmer was the owner of a note for the sum of $95, made, executed, and delivered to him by one J. E. Johnson, and that said Dickason traded said note to plaintiff for a horse, but that said defendants restricted any and all liability of said Palmer by indorsing said note "without recourse on me"; that said note was traded to plaintiff for said horse without any further or different contract or agreement as to the value of said note, and that said plaintiff took said note as it was, without further guarantee or warrant. They therefore deny each and every other or different allegations in said petition contained. As a second defense and by way of a cross-bill, the said defendants alleged that the plaintiff in order to induce the said defendants to part with the said note, represented to said defendants that the said horse mentioned in plaintiff's bill of particulars was sound and kind, good to work in any place, quiet and gentle in har-

ness, and worth $100; which representation and warranty was false in every particular; that said horse was not sound but unsound, was not true and kind but was ugly, vicious, and unmanageable, balky, ungainly and ugly in harness, and of no value whatever; that defendants relied on the representations of plaintiff and believed the same, and was through the said representations and warranty induced to part with the said note; that said defendants have been damaged by the said false warranty and representations of plaintiff in the sum of $100; with demand for judgment.

Plaintiff replied, denying each and every allegation of new matter in said answer contained. There was a trial to a jury, with a verdict and judgment for the plaintiff in the sum of $100. The defendants in their petition in error upon which the cause is brought to this court, assigned four errors:

1. That the court erred in allowing the defendants in error to introduce any evidence in the case under the objections of plaintiffs in error.

2. The court erred in giving instructions 1, 2, 3, 5.

3. The verdict is not sustained by sufficient evidence.

4. The court erred in overruling the motion for a new trial.

The instructions assigned for error were given by the court upon its own motion, and are here set out at length:

1. The vendor of a promissory note before maturity is responsible thereon if the note is fraudulent, fictitious, or forged, even if he indorsed the note without recourse.

2. The jury are instructed as a matter of law that fraud may be proven by circumstantial evidence as well as positive proof. When fraud is charged, express proof is not required, it may be inferred from strong presumptive circumstances.

3. You are further instructed that although you may find from the evidence that the defendants did not know

that said representations were untrue, yet if you believe from the evidence that pending the negotiation of the said note and for the purpose of effecting the trade and inducing the plaintiff to make it, defendants made said representations of his own knowledge and they were untrue, but at the time of making he did not know whether they were true or false, and defendant knew, or had reason to believe, that said plaintiff relied on said representations, and said plaintiff did so rely on said representations and was thereby deceived and induced to make said trade, you will find for the plaintiff.

5.. To entitle the plaintiff to recover in this case, he must show by a preponderance of the evidence that the said note and mortgage were worthless or false, fictitious and forged, as alleged in his petition; that defendants made the representations regarding the same being good and genuine as alleged in the petition, with the object in view and for the purpose of inducing the plaintiff to trade said horse for said note and mortgage; that said representations were false and untrue and that the defendants made them knowing that they were false and untrue, or that they made such representations without knowing the same to be true and were ignorant of the facts so stated, and stated them as true when, in fact, they had no apparently good reason for believing them to be true, and that plaintiff relying upon the same made the trade as alleged in the petition and that plaintiff was injured thereby, then you will find for plaintiff in such sum as damages as is shown by the evidence he has sustained.

The undisputed evidence is to the effect that William S. Dickason was acting as the collector and agent of Hiram J. Palmer and was living at his house; that Frank Courtney had a number of horses which he was keeping for sale at a stable in Grand Island; that he (Courtney) went to Palmer to inquire of him about the standing and responsibility of certain parties in another county whom he under-

stood Palmer knew; that in his interview Courtney stated to Palmer the reason why he wished to learn of the responsibility and standing of the said parties, which was that he was offered some paper on the said parties in a horse deal; that Palmer replied unfavorably of the parties inquired about, and at the same time stated that Dickason, speaking of him as a young gentleman down at his place had a note for $95 secured on eighteen head of cattle that he was desirous of trading for a horse; that a few days afterwards, Courtney went to Palmer's residence and there met Dickason whom he did not know, and of whom he inquired for Mr. Palmer, and made his business known as that he wished to see the young man who had the note to trade for a horse; that thereupon Dickason made himself known to Courtney as the man who had the note; that afterwards Dickason and Courtney met at the stable where the horses were, and finally consummated the trade. Dickason thereupon delivered to Courtney the note for $95 signed J. E. Johnson, payable to H. J. Palmer, by him indorsed "without recourse," as stated in the petition, and a chattel mortgage to secure the same signed by said Johnson, conveying two red cows, seven years old; one spotted red and white cow, six years old; five red steers, two years old; three brindle steers, two years old; one spotted red and white steer, two years old; one spotted red and white cow, three years old; two black heifers, two years old; one red heifer, two years old; one red and white heifer, two years old; one red line-back white face heifer, two years old, "being all the cattle I own." On both the note and mortgage Johnson's residence is stated as Wood River P. O., and these instruments were introduced and received in evidence. At the same time Courtney delivered to Dickason one horse.

Frank Courtney also testified that at the time Palmer first spoke to him about the note, he stated that it was a good note secured by eighteen head of cattle, and that

the maker of the note and mortgage lived three or four miles north of Wood River. This evidence of Courtney as to the representations made to him by Palmer, that the note was a good note and the residence of the maker of the note and mortgage, was denied by Palmer when on the stand as a witness in his own behalf.

There was evidence tending to prove that at or about the time the note became due, the plaintiff made inquiry and search in the region of country about Wood River post-office in Hall county, and two, three, and four miles north of that point for the maker of the note and mortgage, but was unable to find him or any man of the name of J. E. Johnson, or that any man of that name had ever resided or been in that section of country. There was also evidence of parties who then, and for a long time prior thereto, had resided in that vicinity, tending to prove that no party or person of the name of J. E. Johnson had ever been a resident of that portion of Hall county, nor had any of them ever known or heard of a man of that name residing in any part of Hall county. There was also evidence tending to prove that prior to the date of the transfer of this note to the said Courtney, the said Palmer, or Dickason, or both of them, had gone to Wood River, to the supposed residence of the said J. E. Johnson, and had sent agents into said region of the county and made search for the said J. E. Johnson, but were unable to find him or hear of him, or of any person answering to his description, either as the possessor of the eighteen head of cattle or otherwise. This latter evidence, however, was contradicted by Palmer and Dickason, as witnesses in their own behalf.

Plaintiffs in error in the brief of counsel contend that the court erred in giving instructions numbered two, three, and five, for the reason that there was not evidence before the jury to justify the giving of either of the said instructions, and this is probably the only objection which can be made with any degree of plausibility to the instructions.

They also contend, and cite authorities to prove, that an instrument indorsed without recourse, renders the indorser a mere assignor of the title to the instrument, and relieves him of all responsibility for its payment or value. This I do not understand to be exactly the law, or rather that the law is as given by Daniel in his work on Negotiable Instruments at section 670: "When the indorsement is 'without recourse' the indorser specially declines to assume any responsibility as a party to the bill or note; but by the very act of transferring it, he engages that it is what it purports to be, the valid obligation of those whose names are upon it. He is like a drawer who draws without recourse, but who is, nevertheless, liable if he draws upon a fictitious party, or one without funds." And again at section 672: "The indorser contracts that the bill or note is in every respect genuine, and neither forged, fictitious, or altered. Undoubtedly, and by universal admission, this principle applies to the signatures of the drawer, acceptor, and maker of the bill or note who are the original parties, and it is often expressed in language to the effect that the indorser warrants that it is a genuine instrument." Citing many authorities.

Now then, this being the law, as I understand it, the question is: Was there evidence before the jury from which they could find that J. E. Johnson was a false name and a fictitious signature, not a true or genuine one? There can be no doubt from the evidence of Mr. Dickason, which is undisputed, that a man representing himself to be J. E. Johnson borrowed a sum of money from him, money belonging to his co-defendant Palmer and executed the note and mortgage therefor; but it is apparent also that Mr. Dickason made no inquiry of any other person, had no assurance or evidence that this man was in fact J. E. Johnson, or that he lived near Wood River as he represented that he did, or that he had eighteen head of cattle in his possession which he represented that he had. Nor does it

appear that he ever afterwards saw or heard of this indi-
vidual, J. E. Johnson.    Indeed, Mr. Dickason testifies i n
his terse language "that he investigates nothing."    While
as before stated, there is evidence on the part of the plaint-
iff tending to prove that he and his co-defendant had al-
ready investigated but without results.

I am of the opinion that there was evidence before the
jury to sustain the finding which was made, and to justify
the court in giving the instructions which it gave.    The
judgment is therefore

AFFIRMED.

THE other judges concur.