# CHARLESTON.

## TRUSTEES OF BROADDUS INSTITUTE V. SIERS.

Submitted September 3, 1910.    Decided November 1, 1910.

1. ASSIGNMENTS—*Assignment    Without    Recourse—Implied    Warranty Consideration.*

   In the transfer of a chose in action by an assignment "without recourse", there is an implied warranty by the assignor against loss to the assignee by entire or partial failure of consideration.

2. SAME—*Warranty Against Failure of Consideration—Breach—Right of Action Against Remote Assignor.*

   In case of a breach of such warranty, an assignee may sue a remote assignor, by virtue of section 15 of chapter 99 of the Code of 1906.

3. LIMITATION OF ACTIONS—*Action Against Assignor of Chose in Action—Partial Failure of Consideration—Implied Warranty.*

   If the failure of consideration is partial only, causing loss of part of the debt, the statute of limitations does not begin to run, until such failure and the extent thereof have been determined judicially or otherwise.

4. ASSIGNMENTS—*Liability of Assignor—Failure of Consideration of Chose in Action Assigned—Proximate Cause of Loss.*

   Loss by an assignee of a portion of a bond, given by a building and loan association, for the supposed ultimate value of certain of its shares, by reason of a great excess in the amount of the bond above the actual value of the shares, at the date of the execution thereof, is attributable to failure of consideration, in an action by the assignee against the assignor, not insolvency of the association, the latter being regarded in law as

   · 68 W. Va.

a mere remote and antecedent cause, superinducing the real, proximate cause of loss between the parties to the assignment.

Error to Circuit Court, Harrison County.

Action by the Trustees of Broaddus Institute against Winfield S. Siers. Judgment for plaintiff, and defendant brings error.                                            *Reversed and Rendered.*

*Harvey W. Harmer,* for plaintiff in error.

*John Bassel,* for defendant in error.

POFFENBARGER, JUDGE:

On an agreed statement of facts and submission to the court in lieu of a jury, The Trustees of Broaddus Institute, a corporation, recovered a judgment for the sum of $756.25 against Winfield S. Siers, in the circuit court of Harrison county, of which he complains.

The action was brought against Siers on his implied warranty as assignor of a bond for $1,300.00, executed to him by the Eureka Loan and Building Association, on the 2d day of June, 1899, in satisfaction of the supposed value of ten shares of the stock of said association of the par value of $130.00, each on the erroneous assumption that these shares had then matured. He assigned the bond to Boughner and Sons, without recourse, they to H. D. Boughner and he to the plaintiff. It was to become due and payable seven years after its date and bore interest, payable semi-annually, and interest thereon to June 2, 1904, amounting to $390.00, was paid as it became due. In September, 1904, a suit in equity was instituted to settle up the affairs of said association, it having been ascertained that it had sustained heavy losses and failed in its objects and purposes. This suit resulted in the winding up of the corporation and distribution of its assets, after payment of its debts. Among other things, it was determined and decreed that the actual value of the ten shares of stock, for which the bond was given, was only $666.10 at the date of the execution thereof, and that the interest due on said sum to September 17, 1904, the date of the institution of the suit, was $179.80. The excess of interest paid, $210.20, was deducted, and the balance, $455.90, decreed and paid to the plaintiff in this action.

There being no charge nor evidence of fraud or deceit, on the part of the defendant, this action could not have been maintained against him at common law, because he is a remote assignor with whom the plaintiff had no contract. *Caton* v. *Lenox,* 5 Rand. 42; *Watson* v. *Cheshire,* 18 Iowa 202. His transaction was had with Boughner and Sons. It was they, not the plaintiff, that paid him money for the bond. He made no contract with the plaintiff.. But our statute, chap. 99, sec. 15, overcomes this difficulty. The assignee may sue a remote assigner on his implied warranty. *Hughes* v. *Frum,* 41 W. Va. 445; *Goff* v. *Miller,* 41 W. Va. 683.

The circumstances out of which the controversy grew have given rise to a contrariety of opinion as to whether the loss was occasioned by failure of consideration or insolvency of the obligor in the bond; and the settlement of this question will facilitate the disposition of some of the contentions found in the briefs. On its face the bond was a valid obligation for $1300.00, but the settlement or stated account on which it was founded was impeached in the equity suit and set aside, and then it was ascertained and decreed that the amount due the plaintiff, as assignee of Siers, was only $666.10. The consideration of the bond failed, therefore, to the extent of the difference between this sum and the face thereof. Beyond this sum of $666.10, there was no debt and never had been. Full provision for its payment was made by the association and there was no loss of any portion of what the association actually owed. Under the association charter and by-laws, Siers, as a shareholder, was entitled to nothing more than the value of his stock, even though on account of losses, it should be far less than he expected. In the sense of failure to mature its shares and accomplish its general purposes, the association was insolvent, but not otherwise. It was probably not insolvent in the general and ordinary sense of the term; but, if it was, insolvency is not the technical cause of the loss, constituting the cause of action here. It may be regarded as the remote, but not the immediate or proximate, cause. That was failure of consideration, caused by insolvency of the association, antedating the execution of the bond.

In every transfer of a chose in action by delivery or indorsement without recourse, there is an implied warranty of a sufficient and valid consideration. The assignor warrants that the

bill, note or bond is genuine and that the amount of money it calls for was owing and unpaid at the time of the assignment, in the absence of an express agreement to the contrary. *Houston* v. *McNeer,* 40 W. Va. 365, 371; *Bank* v. *Spates,* 41 W. Va. 27; *Goff* v. *Miller,* 41 W. Va. 683; *Whitworth et als.* v. *Adams,* 5 Rand. 333, 377; *Bankhead* v. *Owen,* 60 Ala. 457; *Watson* v. *Cheshire,* 18 Ia 202; *Aldrich* v. *Jackson,* 5 R. I. 218; *Palmer* v. *Courtney,* 32 Neb. 773; *Charnley* v. *Dulles,* 8 W. & S. (Pa.) 353. Some of these decisions say nothing about warranty against failure of consideration, for the reason that it was not involved, but others of them do and enforce it. The substance of the decisions is summarized as follows in 7 Cyc. 831-2: "The transferrer of commercial paper, even where endorsed 'without recourse', warrants the validity of the instrument. Thus he is held impliedly to warrant that the paper is supported by a valid consideration, that it is properly stamped, that prior parties had capacity to contract, that the instrument is still subsisting as a valid obligation, and in general that there is no legal defense growing out of his own connection with the paper."

More than five years having elapsed between the date of the assignment and the commencement of this action, defense is made under the statute of limitations, upon the assumption that the warranty was broken and the right of action accrued on the making of the assignment. This is the rule when there is a total failure of consideration. *Bank* v. *Spates,* 41 W. Va. 27; *Blethen* v. *Lovering,* 58 Me. 437; *Whisler* v. *Bragg,* 31 Mo. 124; *Ware* v. *McCormack,* 96 Ky. 139. In this class of cases the right of action arises full and complete, the instant the transfer is made, and there is no reason for delay. But this is not true of a partial failure of consideration. The note or bond is worth something. Part of it can be recovered from the debtor. The assignor may be good for the consideration of the transfer paid to him and he may not. The assignee has a right of election between rescission, on the one hand, involving surrender of the paper and action for the whole consideration paid, and affirmance, on the other, with a right of action for breach of the warranty. In the first case, he would look to the assignor only. In the other, he would hold both parties, the acceptor, maker or obligor for the valid part of the debt and the assignor for the balance. Choosing the latter course, he holds a paper valid on

its face for the full amount called for, all of which he may recover, provided a certain defence shall not be interposed. This the debtor may see fit to waive. What he will do cannot be certainly known until the end of litigation to recover the debt. Moreover, this is the only sure test of the actuality or soundness of the defense. It is also the only means by which the extent of the failure can be determined with certainty, and the amount of the claim of the assignee against the assignor fixed. Hence it may be said, with reason, that his cause of action is not complete until he has procured a judicial establishment of the failure of consideration and the extent thereof. Obviously the breach is not complete, until the extent of the failure has been ascertained and fixed. Until that time neither can know, with certainity whether there is a liability or the amount thereof. The liability arises by implication of law and should not be so raised until the circumsances are sufficiently disclosed to import certainity in respect to the liability and its extent. To require the assignee to sue the assignor first would subject him to great peril. In that action the jury might find no failure of consideration at all or only a very limited one. In the next action against the debtor, the jury might find a very extensive one, and so inflict upon the assignee a serious and irremediable loss. The principle of the following decisions sustains the proposition that the cause of action is not complete, in the case of a partial failure of consideration, until after judicial determination thereof, in an action against the principal debtor. *Scates* v. *Wilson,* 9 Leigh 473; *Bowles* v. *Woodson,* 6 Grat. 78; *Stewart* v. *Keith,* 12 Pa. St. 238; *Evans* v. *See,* 23 Pa. St. 88. The first of these cases is a direct precedent for the application of the general principle. The others say that so long as a transaction between the parties remains open and incomplete so that their rights are not susceptible of certain determination, the statute does not begin to run. In the application of the statute to mutual accounts, this principle is recognized and enforced, by taking the date of the last item as the point at which it starts to run. Page on Con., sec. 1655. The statute never runs against a continuing contract until the end thereof. Page on Con., sec. 1655. Under the head of "Failure of Consideration", Angell on Lim., secs. 117-119, asserts the general doctrine we are applying, and sustains it by

numerous decisions. We are of the opinion therefore, that the statute did not begin to run before the adjudication in the equity suit, and that the action is not barred.

A further contention is that the amount paid the plaintiff under the decree in the equity suit should have been credited on the invalid part of the bond, but no authority is cited, justifying or even suggesting, such an application. That would be manifestly unjust and unreasonable. It would make the association pay what Siers ought to pay and the plaintiff lose what the association itself was bound to pay.

The defendant in error insists that it was entitled to a larger judgment and so cross-assigns error. This assignment is well taken. The judgment includes interest on $633.90, the amount of the loss, from about September, 1904, after applying all payments from the association on the valid part of the debt. As nothing had ever been paid on the difference between the actual debt and the face of the bond either interest or principal, the plaintiff was entitled to judgment for such difference, with interest thereon from the date of the assignment, May 26, 1900, until the date of the judgment, February 18, 1908, which, it is claimed, amounts to $926.71. We find it to be, in fact, $927.82, and judgment should have been rendered for that amount.

For the error in respect to the amount thereof, the judgment will be reversed, and judgment will be rendered here now, in favor of the defendant in error, as of February 18, 1908, for the sum of $927.82, with interest thereon from said date until paid, as well as for its cost in the court below and its costs and damages according to law in this Court. *Reversed and Rendered.*