## SANFORD v. WELLER. (No. 5711.)*

(Court of Civil Appeals of Texas. San Antonio. Nov. 15, 1916. Rehearing Denied Dec. 13, 1916.)

ATTORNEY AND CLIENT ⬠149 — CONTRACT FOR EMPLOYMENT.

An attorney's agreement with the owner of a ranch in Mexico to sue to recover cattle, or the value thereof, which the agreement recited had been converted by a Mexican general, the agreement assigning to the attorney a "one-fourth interest in what may be recovered by suit or compromise," the rancher not to be responsible for the attorney's services if the latter should not succeed in recovering anything of value, did not entitle the attorney to compensation, when he failed to recover anything, nor was he entitled to one-fourth interest in the cattle on the ranch not converted, on the theory that since he had been induced to start suit and change his position by the representation that all the cattle on the ranch had been converted, the rancher was estopped to deny such representation, since the attorney knew at the time of the agreement that his client had fled from Mexico, and did not personally know that the cattle had been converted.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 351–357; Dec. Dig. ⬠149.]

Appeal from District Court, Maverick County; W. C. Jackson, Special Judge.

Action by J. R. Sanford against R. H. Weller. From judgment for defendant, plaintiff appeals. Affirmed.

Geo. M. Thurmond, of Del Rio, and R. D. Wright, of Eagle Pass, for appellant. Ball & Seeligson and Chas. W. Trueheart, all of San Antonio, for appellee.

MOURSUND, J. J. R. Sanford sued R. H. Weller, alleging that a few days prior to April 27, 1914, Weller solicited Sanford's services as an attorney at law to represent him in a certain cause of action which he had against Alberto Guajardo, who, Weller represented, had entered upon a ranch owned by

Weller in Mexico, and had, during the month of April, 1914, taken possession of and converted to his own use live stock belonging to Weller of the value of $267,500. This live stock was described in the petition. Plaintiff, Sanford, further alleged that defendant, Weller, requested plaintiff to file suit against Guajardo and have a writ of garnishment issued and served on the First National Bank of Eagle Pass, and represented that he had reason to believe Guajardo had money on deposit in said bank, and that Guajardo was a nonresident; that on April 27, 1914, plaintiff and defendant entered into the following written contract:

"The State of Texas, County of Maverick: This memorandum of agreement this day made and entered into between R. H. Weller, first party, and J. R. Sanford, second party, both residents of Maverick county, Texas, witnesseth:

"First. First party has employed second party as his lawyer to represent party in a prosecution of a certain suit which he has against Alberto Guajardo, who is the same person as L. A. Guajardo, a resident of the republic of Mexico, for the value of certain cattle belonging to first party, and which were converted by the said Guajardo during the month of April, 1914. Cattle being of the following description: 3,200 head of stock cattle branded Z X on left hip, with ear marks crop off each ear, thus (mark), of the value of one hundred sixty thousand ($160,000.00) dollars, fifty head of thoroughbred cattle branded D on left hip, with no ear marks, of the value of $7,500.00; 1,400 head of three and four year old steers branded Z X on left hip of the value of $70,000.00; 150 head of horses and 150 head of mules branded Z X on left thigh and some branded V on right jaw; 300 being of the value of $30,000 and which stock at the time of the conversion were located at the Las Rucias ranch in the District of Monclova, state of Coahuila, United States of Mexico, which ranch is situated about fourteen miles north of the town of Musquiz.

"Second. The second party accepts the employment and agrees to prosecute the suit in the district court of Maverick county, Texas, and appellate courts, and if necessary to further prosecute claims in other courts of the state or the United States, or through the United States government at Washington.

"Third. This employment also covers any and all other claims which the first party may have against any one or against the Mexican government, or against any party or parties who may be responsible for the loss, damage or conversion of any of his property which he may now have or which may arise in the future during the unsettled conditions existing in Mexico.

"Fourth. And in consideration of the services performed and to be performed by the second party, the first party assigns, transfers and conveys unto the second party a one-fourth interest in what may be recovered by the first party either by suit or compromise, either in money or other things of value.

"Fifth. The court costs shall be paid equally by the first and second parties, that is the first party shall pay one-half and the second party shall pay one-half thereof.

"Sixth. The first party shall make all bonds which may be necessary during the prosecution of any of the claims.

"Seventh. In the event the said party of the second part does not succeed in recovering anything of value, then the first party will not be responsible to him for his services.

"Eighth. Neither party shall compromise any of the claims without a consultation is first had and an agreement is arrived at satisfactory between the first and second parties hereto.

"Witness our hands this the 27th day of April, A. D. 1914.
"R. H. Weller,
"Party of the First Part.
"J. R. Sanford,
"Party of the Second Part."

Plaintiff further alleged that in pursuance of the terms of said contract he filed suit against Guajardo for $267,500 and procured a writ of garnishment; that at the time the contract was entered into it was a fact that Guajardo, through his agents and employés, was in possession of said live stock in defiance of any right or claim of defendant, and defendant had been ousted from his ranch, and had taken refuge in the United States; that, regardless of whether any one had converted this live stock, Weller represented to plaintiff that Guajardo's agents and employés had taken possession of the live stock and ousted Weller from his ranch, and plaintiff believed such to be the case, and if it was untrue plaintiff did not know it was untrue, but, "relying upon the facts as a basis for the contract, and that contracting with reference to the facts as being true, and having the same recited in the contract, plaintiff was led to contract upon the basis of said facts, and that he performed the services and expended money and so changed his position, and consequently defendant is estopped from denying that such a state of facts existed"; "that defendant says the representations herein alleged and those recited in the contract, and with reference to which the parties contracted, were not true, and plaintiff says that if they were not true, then defendant is guilty of a fraud committed in Maverick county; that if the representations were true, then plaintiff says that at the time the representations were made, and at the time the contract was formed, the defendant had no intention of performing the same, but used his obligations therein made as false pretenses and tricks to induce plaintiff to undertake the employment, and to file the suit and garnishee the said bank, believing that he (defendant) would not be further molested in Mexico after the suit was filed, and that his cattle would be released, and that defendant had no intention of continuing the prosecution of the suit, or of producing evidence in Maverick county, to sustain his case, and this, his purpose in inducing plaintiff to enter into the contract to spend his money and perform same, was to intrap and defraud plaintiff by holding before him those false promises of defendant recited in the contract, and which defendant intended at the time to disregard, all of which fraud was committed in Maverick county, Tex.;" that after the filing of suit and service of writ of garnishment, defendant succeeded in regaining possession of said live stock, with the exception of about 63 head of cattle worth $3,150 and horses and mules worth $30,000; that plaintiff diligently represented defendant, and sought to recover the stock or col-

lect its value, and in all things complied with his contract; that in April, 1915, defendant breached said contract, in that he undertook to sell and convey all of the live stock of which he had recovered possession, and plaintiff, upon receiving notice from defendant of such undertaking, objected to defendant selling and conveying the one-fourth interest in said stock claimed by plaintiff under the contract; that defendant then repudiated plaintiff's claim, and failed and refused to deliver to plaintiff his interest in the cattle or pay the value thereof, but converted the same to his own use and benefit; that the reasonable value of plaintiff's interest in the 4,000 head of stock recovered was $58,500 and the reasonable value of the care thereof was not more than $1 per head. Plaintiff prayed for judgment for one-fourth interest in the stock, or its value, less the value of the care thereof.

Defendant filed a plea of privilege to be sued in Bexar county, and, subject thereto, answered by special exceptions, a general denial of allegations, not specially admitted, and a special answer, wherein he admitted the execution of the contract sued upon, but alleged that if it was susceptible of the construction placed thereon by plaintiff, then it was not defendant's contract or binding on him, because it was so executed by mutual mistake, or a mistake on the part of defendant and a fraud on the part of plaintiff, in that it purports to cover all cattle and horses owned by defendant in Mexico; that he went to plaintiff for the purpose of securing advice with reference to his property in Mexico, and informed plaintiff that he had been reliably informed that an army, or large body of men, under the control and direction of Alberto Guajardo, who was purporting to act as brigadier general, was rapidly approaching defendant's ranch, and defendant had also been informed that said army expected to capture and probably kill defendant, and to seize, carry off, and destroy all of his live stock, and defendant had left the ranch several days prior to his consultation with plaintiff, and presumed and supposed that seizure and conversions had already then been made, or were being made, of his property; that he also informed plaintiff that Guajardo, or his men, had, prior to the above-mentioned invasion, seized and taken away many of defendant's cattle, horses, and mules; that he consulted plaintiff as to what course to pursue for the recovery of his property, and plaintiff advised that a suit be brought against Guajardo, and garnishment sued out, informing plaintiff that Guajardo had a large amount of money on deposit in the First National Bank of Eagle Pass; that he also advised the execution of, and wrote, the contract described in plaintiff's petition; that he had full faith and confidence in the ability and integrity of plaintiff, and executed said contract believing and understanding that it only covered and included, and that both parties intended that plaintiff should only have, a one-fourth interest in such property as may have been actually converted by Guajardo and which, or its value, might be recovered by and through the efforts of plaintiff, and did not contemplate or intend that plaintiff should have any interest in property that had not been taken or converted by Guajardo; that after the making of the contract plaintiff só construed the same, and if the contract bears the construction and is to the effect as contended by plaintiff in his pleading, it was so drawn by mutual mistake, or if plaintiff understood and intended it to be to the effect now pleaded by him, then he procured the same, and induced and led defendant to execute and deliver the same, through a mistake of defendant, and through fraud perpetrated by plaintiff upon defendant. Defendant further alleged that even if the contract be held binding to the effect claimed by plaintiff, the latter could not recover because under the terms of the contract, and especially the fourth paragraph thereof, plaintiff was only to receive one-fourth interest in what might be recovered by the first party, either by suit or compromise, and defendant has received nothing by suit or compromise. Defendant admitted that plaintiff filed suit and sued out a writ of garnishment as alleged by him, and alleged that on about May 5, 1915, plaintiff notified defendant that he would not further represent defendant in said suit, and returned to defendant the papers relating to the matter; that shortly after said suit was filed he advised plaintiff that Guajardo and his men had not taken all of his property, as he supposed would be done "and as was in contemplation when said contract was executed," but had taken "78 horses, three big mules, and 63 fine cows"; that he did contract the sale of his horses, cattle, and mules to J. M. Dobie in April, 1915, and did not recognize any claim of interest therein on the part of plaintiff, because said stock had not, at any time, been "taken, carried away, or converted" by Guajardo, his army or men, or any one under his direction or dominion, and therefore could not, by any possible construction have been received or recovered, either by suit, compromise, or otherwise in contemplation of and under the terms of said contract.

The cause was submitted upon special issues, the first of which was not answered. The issues and answers are as follows:

(1) Was it the intention of both the plaintiff and defendant when they entered into the contract sued on that plaintiff should have for his services a one-fourth interest in all the live stock described in said contract? Answer: ————.

(2) Did the defendant, R. H. Weller, intend and understand, at the time of the execution of the contract in question, to assign to the plaintiff in only a one-fourth interest in the cattle, if any, that had been converted by Guajardo? Answer: The defendant Weller did in-

tend and understand, at the time of the execution of the contract in question, to assign to the plaintiff only a one-fourth interest in the cattle that had been converted by Guajardo.

(3) If in answer to the second special issue submitted, you find that the defendant, Weller, understood and intended, at the time of the execution of this contract, to assign to the plaintiff only a one-fourth interest in the cattle, if any, that had been converted by Guajardo, then you will answer the following questions: At the time of the execution of the contract, did the plaintiff, Sanford, know that the defendant, Weller, understood and intended to assign. only a one-fourth interest in the cattle, if any, that had been converted by Guajardo, and with this knowledge, if any, did the plaintiff, Sanford, permit defendant, Weller, to execute the contract without the plaintiff, Sanford, informing the defendant, Weller, that such was not the effect of the contract? Answer: The plaintiff, Sanford, did know that the defendant, Weller, understood and intended by the execution of the contract to assign only a one-fourth interest in the cattle, if any, that had been converted by Guajardo.

(4) What portion or part of defendant's property described in said contract did Alberto Guajardo convert, if any? You will set out and describe in answer to this question the stock you find, if any, so converted, by kind and numbers. By "conversion" as applicable to this charge is meant any distinct act or dominion wrongfully exerted over another's property in denial of his right or inconsistent with it. Answer: 63 head of cattle, 150 horses, 150 mules.

(5) You will find and state in your answer the value of all the cattle remaining on the Weller ranch in old Mexico after Alberto Guajardo's men departed from and left said ranch, and that were thereafter in the possession of the defendant, Weller, which are described in said contract, less the reasonable expense of caring for them for 12 months. Answer: $123,849.00."

Judgment was entered in favor of defendant, and plaintiff appealed.

No exceptions were urged by either party to any of the issues answered by the jury. We may therefore take it for granted that there is evidence to support each finding, unless the fact that a motion for peremptory instruction was made prior to the giving of the general charge, dispenses with the necessity of objecting to the issues submitted, and is equivalent to an objection to the sufficiency of the evidence to justify the submission of each special issue. It has been held that such is not the law. Essex v. Mitchell, 183 S. W. 399. Be this as it may, we have examined the testimony, and conclude that each of the findings sought to be attacked by appellant is sustained by the evidence.

We will discuss the questions of law without considering each assignment of error separately.

The parties apparently agree that the contract in question falls within the class of assignments considered and discussed by the Supreme Court in the case of Railway v. Ginther, 96 Tex. 295, 72 S. W. 166; that it is an assignment of an interest in a cause of action of which a judgment or compromise was to be the measure. They disagree, however, upon what fund would come within the terms of the assignment evidenced by the contract sued on, Sanford contending that the words, "a one-fourth interest in what may be recovered by the first party, either by suit or compromise, either in money or other thing of value," would include all property which had been converted, and of which defendant regained possession by suit or compromise, or in any other manner, while Weller contends that the words should be given a literal meaning, and the assignment would relate only to money or property recovered by suit or compromise. It appears to us that it is unnecessary to decide this point in view of the finding of the jury that the stock in which Sanford claims an interest, in this suit was never converted. We think the point thus raised cannot be determinative of the controversy in this case, for, conceding Sanford's construction to be correct, he has failed to prove that the live stock in which he asserts an interest was ever converted by any one. The jury found, and its finding is amply sustained by the testimony, that there was no conversion of this live stock. Neither Sanford nor Weller recovered the same from Guajardo or any one else. Sanford pleaded that such live stock had been converted by Guajardo, and "that Weller succeeded in regaining possession of and recovering said live stock." He failed to prove these allegations, and, having made no case under this count of his petition, it is immaterial whether or not he is correct in contending that he was to have a one-fourth interest in all converted property recovered in any manner by Weller, instead of only such as was recovered by suit or compromise.

Sanford contends, however, that even if the live stock in which he seeks to establish an interest was not converted, nevertheless he is entitled to recover a one-fourth interest therein or its value. This claim is not founded upon the theory that the contract directly vests in him a one-fourth interest in all live stock described therein in consideration of the services to be performed by him, and no such theory could be urged with any degree of plausibility, for the clause, fixing the compensation too plainly and unequivocally, stamps the contract as one assigning an interest in a cause of action of which a judgment or compromise is to be the measure, and not one transferring an interest in live stock. His claim is based on the theory that, as the contract contains the statement that all of Weller's live stock has been converted by Guajardo, such statement became the basis for the contract, and that Weller is estopped to deny its correctness. Having arrived at this conclusion, he contends that, as Weller has possession of about $237,000 worth of the live stock described in the contract, he (Sanford) is entitled to recover a one-fourth interest therein. The pleading relating to this contention charges Weller with fraudulent misrepresentation of the extent of the conversion, and it is claimed that Sanford al-

tered his position to his detriment on account of such misrepresentations. No issue with respect to this matter was requested to be submitted to the jury, and the evidence fails to substantiate the allegations with reference to fraud. In fact it appears that Sanford knew Weller had left his ranch before the depredations by Guajardo's men took place, and had no personal knowledge of the extent thereof, and some doubt existed in Sanford's mind, for he expressed doubt whether Weller could prove the conversion, and Weller named the parties from whom he had heard that it had taken place.

It is also clear that the facts relating to the extent of the conversion were deemed important because of the necessity of making specific allegations in the petition and making oath in order to procure a writ of garnishment, but there is nothing to indicate that Weller was given to understand that any statement he might make as to the extent of his claim would be important in fixing the rights of plaintiff under the contract. There is no evidence to the effect that plaintiff would not have accepted the employment had he known the real facts. There being no imposition in fact practiced upon Sanford, his contention is that, regardless of fraud or imposition, Weller signed a contract, stating that all of his property had been converted, and is estopped to deny such statement. He invokes general rules relating to estoppel announced in text-books, but cites no case wherein such rules have been applied in a case based on facts similar to those in this case. We do not think the rules relied on are applicable. Estoppel must be predicated upon a state of facts showing that it would operate as a fraud upon a party if the other is permitted to deny certain statements. The doctrine of estoppel should never be carried so far as to make a contract never intended or contemplated by the parties—to create greater rights, in fact, a far more favorable contract than if in fact all of defendant's property had been converted. Such would be the peculiar result if plaintiff is permitted to recover from defendant one-fourth of the stock not converted, when he was unable to recover from Guajardo the $30,000 for stock actually taken, and there is nothing to indicate that it would have profited him aught had defendant really possessed a claim for $267,000. It would make a contract which Weller would undoubtedly not have knowingly entered into, and one which Sanford apparently did not intend or contemplate, for although Weller reported to him, soon after the suit was filed in April, 1914, that only $30,000 worth of live stock had been taken by Guajardo, no claim was asserted by him to the remaining $237,600 worth of stock until April, 1915, although he had many opportunities to make such claim to Weller. We think the rules of law to be applied in determining the effect of misdescribing the cause of action are to be found by investigation of the authorities relating to assignments of choses in action. "In the absence of an express warranty, the assignor of a chose in action, for a valuable consideration, impliedly warrants to the assignee that the chose assigned is a valid, subsisting obligation in his favor against the debtor to the extent to which it purports to be such." Corpus Juris, vol. 5, p. 968, Ruling Case Law, vol. 2, p. 627; Elliott on Contracts, vol. 2, § 1456; Miners' Bank v. Burress, 164 Mo. App. 690, 147 S. W. 1110; Scott v. Hix, 2 Sneed. 192, 62 Am. Dec. note, p. 467; Boyd v. Anderson, 1 Overt. 438, 3 Am. Dec. 762; Trustees of Broadus Institute v. Siers, 68 W. Va. 125, 69 S. E. 468, Ann. Cas. 1912A, page 920; Galbreath v. Wallrich, 45 Colo. 537, 102 Pac. 1085. In the note to Scott v. Hix, supra, we find the following quotation:

"Says Mr. Justice Sharswood, in Flynn v. Allen, 57 Pa. 482: 'The doctrine that the vendor of chattels in possession impliedly warrants the title extends to choses in action. Ritchie v. Summers, 3 Yeates (Pa.) 531; Charnley v. Dulles, 8 Watts & S. (Pa.) 361; Swanzey v. Parker, 50 Pa. 450 [88 Am. Dec. 549]. As in the sale of other things, he undertakes, not for their quality, that they are really worth the money they represent, but that they are what they purport to be; in other words, he warrants the genuineness of the claim upon them. Lyons v. Divelbis, 22 Pa. 185. Every obligee or holder of an obligation who assigns it to another, especially if he does so for a valuable consideration, impliedly, at least, thereby engages that it is genuine, and binding upon the obligor, unless he discloses fully and truly to the assignee in treating for the assignment all the facts and circumstances connected with the execution and delivery of the obligation. and, after being thus advised, the assignee agrees to take it at his own risk.'"

"The measure of the assignee's damages for breach of warranty of title and validity of the choses assigned is, generally, the amount he paid the assignor for the chose, with interest, and costs reasonably incurred by him in an attempt to enforce the chose against the debtor." Corpus Juris, vol. 5, p. 971, and authorities above cited.

Applying the rules so established, it appears that if there be any liability under the facts disclosed by this record on the part of Weller to plaintiff for stating in the contract that his claim was one for the conversion of all the live stock therein described, such liability would be for breach of implied warranty, and would entitle plaintiff to recover the expenses incurred in seeking to recover on the spurious claim and the reasonable value of his services in regard thereto. No such recovery is sought in this suit.

We conclude that appellant is not entitled to recover upon either theory urged by him, without reference to the findings of the jury on the issue of mistake.

It is too plain for argument that no clause of the contract purports, on its face, to vest in Sanford a one-fourth interest in live stock not converted, but if there was such a clause, it would conflict with paragraphs 4 and 7 of the contract, and create an ambiguity which, under various rules of law, as well as the findings of the jury, would have

to be solved in favor of Weller. Elliott on Contracts, §§ 1521, 1528, 1531, 1538, and 1564.

Let us, however, for the purpose of considering the effect of the second and third findings of the jury, consider the case from the standpoint that appellant is correct in his theory of estoppel and in his construction of the legal effect of the contract. If Sanford, in drawing the instrument, had expressed the intention of both parties, and that intention had been to vest in Sanford a one-fourth interest in all live stock described therein, but the making of the agreement was induced by the mistaken belief that Gaujardo had converted all of said live stock, and the agreement would not have been entered into by Weller but for such belief, he would have been compelled to rely upon the rules of law relating to mistakes of fact. Such an agreement was not made nor directly expressed in the instrument signed by the parties, but appellant contends that, by operation of the rules of law relating to estoppel, the same legal effect must be given to the instrument drawn by him and signed by the parties as if it had directly stated that Sanford was to own one-fourth of all the live stock, whether converted or not. There can be no doubt that in making their agreement both parties assumed that all of Weller's live stock had been converted, and contemplated that Sanford might have to try to recover all of same or its value. There can also be no doubt that had they known the facts, they would only have contemplated that Sanford's services would be required to try to recover the stock actually taken, and in drawing the contract the stock converted would have been described, instead of all of the stock. But Weller's plea of mistake goes further than that. He contends that, although it was assumed that all of his live stock had been converted, his intention was to assign to Sanford only one-fourth of his cause af action for such live stock as should prove to have been actually converted. He contends, further, that this intention of his was known to Sanford, and that the latter, who is chargeable with the selection of the words used in reducing the agreement to writing, did not inform him of the fact that, as drawn, the instrument did not express such intention; that is, he did not inform Weller of the legal effect of stating in the instrument that the cause of action against Guajardo was one for conversion of all the stock; that such statement, in spite of paragraphs 4 and 7, had the legal effect of transferring to Sanford a one-fourth interest in all of the cattle described therein not converted. The jury sustained these contentions made by Weller. We may take it as established, then, that if the instrument could be given the legal effect by estoppel to vest in Sanford a one-fourth interest in cattle not converted, it

failed to express the legal import of the contract actually made, and that this failure resulted from a mistake as to the legal operation of stating that all of the live stock had been converted. This is the kind of mistake spoken of by Mr. Pomeroy in his work on Equity Jurisprudence (3d Ed.) § 845, in the following language:

"If * * * after making an agreement, in the process of reducing it to a written form, the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of the contract actually made; but the mistake of law prevents the real contract from being embodied in the written instrument. In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing. Among the ordinary examples of such errors are those as to the legal effect of a description of the subject-matter, and as to the import of technical words and phrases; but the rule is not confined to these instances." 2 Pomeroy's Eq. Jur. 3d Ed. sec. 845.

For annotations on this subject, see note to Dolvin v. Harrow Co., 28 L. R. A. (N. S.) p. 785.

This court being of the opinion that appellant is entirely wrong in his contention as to the construction of the contract, it follows, of course, that if appellant is correct, we cannot blame Weller for supposing that paragraphs 4 and 7 of the instrument were adequate to express his intention not to transfer any interest in live stock not converted. The jury found that Sanford knew what Weller intended to agree to, and if in performing the task of reducing the agreement to writing he did not know he was using language importing another agreement, the mistake would be a mutual one. If he knew or believed that the instrument drawn by him had a different legal effect, he failed, as found by the jury, to inform Weller of the true effect of the contract. The failure to speak under such circumstances has often been held to constitute such inequitable conduct as will enable the other party to take advantage of a unilateral mistake. Pomeroy on Eq. Jurisprudence (3d Ed.) § 847; Simkins, Equity, pp. 516, 517, and cases there cited.

In view of the findings of the jury and the foregoing rules of law, it appears that if appellant's contention, based on the theory of estoppel, be correct, nevertheless, the judgment must be affirmed, because equity will not permit the enforcement of any such construction of the contract.

All assignments of error are overruled, and the judgment is affirmed.