# Richmond

HENRY M. TAYLOR, ET AL. v. FRANCES PARROTT WOOD, ET AL.

March 7, 1960.

Record No. 5035.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Henry M. Taylor, Jr.* and *Walker Florance* (*Florance, Gordon & Brown*, on brief), for the appellants.

*Henry E. Belt*, for Frances Parrott Wood and Sally Watson Hopkinson, appellees.

EGGLESTON, C. J., delivered the opinion of the court.

This is a suit in equity brought by Peoples National Bank of Charlottesville, executor under the will of James Oscar Thurman, against the proper parties, to construe the will and a related written agreement signed by Thurman and others, and asking the guidance of the court in the proper distribution of the decedent's estate. Under the will, probated on September 11, 1957, Thurman devised and bequeathed all the rest and residue of his estate to Frances Parrott Wood and Sally W. Hopkinson.

On July 23, 1935, Thurman and his wife, Maria M. Thurman, had entered into a written agreement with Lucy M. Taylor, Sarah M. McMurdo and the latter's husband, which read thus:

"We the undersigned owners of Edgmont Farm situated in Rivanna Magisterial district of Albemarle Co. Va. hereby make this agreement.

"To-wit: That J. Oscar Thurman and Maria M. Thurman his wife may continue to live on the said farm for their lifetime or until it can be sold at a price satisfactory to each owner. For this privilege J. Oscar Thurman and Maria M. Thurman agree that he or she, whichever may live longest will give by his or her will all the property he or she may own at time of death to Lucy M. Taylor and Sarah M. McMurdo in equal parts or to their heirs dividing each of

their parts as they see fit. If said farm is sold during the life of J. Oscar Thurman and Maria M. Thurman this agreement is canceled."

At the time the agreement was executed Lucy M. Taylor, Sarah M. McMurdo and Maria M. Thurman each owned an undivided one-fourth interest in the property. The remaining one-fourth interest was owned by Sally W. Hopkinson and Elizabeth D. Henshaw who, by deed dated August 20, 1935, conveyed it to Maria M. Thurman and James Oscar Thurman as tenants by the entireties with the right of survivorship.

Lucy M. Taylor died in 1945 and her one-fourth interest in the property passed under her will to her daughter, Lucy Ann Taylor, one of the appellants. Sarah M. McMurdo died in 1948 and her one-fourth interest passed under her will to her son, Charles E. McMurdo, one of the appellants. Maria M. Thurman died in 1947 and her one-fourth interest passed under her will to her husband, James Oscar Thurman. By surviving his wife, Thurman also became the owner of the other one-fourth interest under the provisions of the deed to them by Sally W. Hopkinson and Elizabeth D. Henshaw.

In May, 1950, Thurman, who by that time had acquired a one-half interest, and Lucy Ann Taylor who owned a one-fourth interest, and Charles E. McMurdo who owned the remaining one-fourth interest, sold and conveyed the property to George Worthington.

The undisputed evidence is that the agreement of July 23, 1935, was written by Mrs. Thurman and held by Thurman until his death. Mrs. Thurman was born at "Edgmont" and lived there all of her life. Upon her marriage to Thurman in 1919, and until her death in 1947, they lived together on the place without the payment of rent or accounting to the other owners for the proceeds derived from the property. This was with the consent of the other part owners who had a deep affection for Mrs. Thurman and desired to gratify her wish that she might live on the place for the rest of her life. Upon his wife's death Thurman lived at "Edgmont" for about a year when he left voluntarily and boarded at the home of Frances Parrott Wood until his death in 1957.

The pivotal issue presented to the lower court and to us is whether the parties to the agreement of July 23, 1935, intended that it would be canceled by a sale of the property during the joint lives of the Thurmans or by a sale during the life of the survivor of them. If the former interpretation be correct, as the appellants claim, since there was no sale during the joint lives of the Thurmans the agreement was in effect and binding on Thurman at the time of his death and should

be specifically enforced in favor of the appellants against his estate. If the latter interpretation be correct, as the appellees claim, the sale of the property by Thurman and others in May, 1950, canceled the agreement and he was free to dispose of his estate by his will.

The lower court held and decreed that it was the intent of the parties that the "agreement should be canceled if the property known as 'Edgmont' was sold during the lifetimes of Maria M. Thurman and J. Oscar Thurman or during the lifetime of either of them. That the property known as 'Edgmont' was sold for a satisfactory price to the parties subsequent to the death of Maria M. Thurman, but during the life of J. Oscar Thurman, and said agreement was thereby canceled and became of no effect." Consequently, it further held that Thurman's estate passed under the terms of his will to Frances Parrott Wood and Sally W. Hopkinson. From this decree the Taylor and McMurdo heirs have appealed.

There is a motion to dismiss the appeal on the grounds that, appellants' counsel (1) failed to give "opposing counsel" reasonable written notice of the time and place of tendering the transcript of the testimony and incidents of the trial to the lower court for certification, as required by Rule 5:1, § 3(f); and (2) failed to designate for printing all of the evidence in the record which was germane to the errors assigned, as required by Rule 5:1, § 6. For reasons to be stated, the motion is without merit on either count.

As to the first ground, the record shows that copies of the reporter's transcript of the hearing were furnished to counsel for appellants and appellees on or about August 1, 1958. Thereafter counsel for these parties submitted to the lower court briefs and oral arguments in support of their respective positions. No question as to the correctness of the transcript was raised by counsel for any of the parties. The decree appealed from was entered on January 6, 1959. On February 23 counsel for the appellants wrote counsel for the appellees, Wood and Hopkinson, and counsel for the executor bank of their intention to present a petition for appeal from the decree and noted the necessity of having the transcript certified by the trial judge. This letter concluded: "If you have no objection, I should appreciate your notifying me and sending a copy of your letter to Judge Bowles, and I will arrange to get the record to him for certification." Counsel for the bank executor did not reply to this letter, but counsel for the appellees, Wood and Hopkinson, wrote: "I have your letter of February 23rd, and of course, I have no objection to Judge Bowles certifying the transcript in the above case." The transcript was

presented to the trial judge on March 6 and certified by him the day following.

It is clear from what has been said that counsel for the appellees, Wood and Hopkinson, waived the requirement of further notice of presentation of the transcript to the trial judge.

But, it is said, counsel for the bank executor did not waive the required notice because they made no reply to the letter of February 23 from appellants' counsel. It is apparent from the nature of the case that the bank executor is a mere stakeholder and that the real parties in interest are the appellants, the Taylor and McMurdo heirs, and the appellees, Wood and Hopkinson. As the transcript shows, counsel for the bank executor made no appearance during the taking of the depositions or at the trial in the lower court. They had no firsthand knowledge whether the transcript of the proceedings was correct or not and left that entirely to counsel for Wood and Hopkinson, with whom they are collaborating in the motion to dismiss. Hence, the interests of the bank executor in seeing to the accuracy of the transcript was fully protected by counsel for the appellees, Wood and Hopkinson. See *Andrews* v. *Cahoon,* 196 Va. 790, 796, 797, 86 S. E. 2d 173, 177.

The contention of the appellees that counsel for the appellants did not designate for printing all of the material testimony as required by Rule 5:1, § 6, is likewise without merit. It appears from the record that the omitted portions of the evidence were designated and printed at the direction of counsel for the appellees. See *Jenkins* v. *Womack,* 201 Va. 68, 69, 109 S. E. 2d 97, 98.

Turning to the merits, we do not agree with the lower court's interpretation of the cancellation provision. As has been said, it held that the parties thereby intended that a cancellation would be effected if the property were sold "during the lifetimes (*sic*) of Maria M. Thurman and J. Oscar Thurman *or during the lifetime of either of them*" (italics supplied), and that the sale in May, 1950, during the life of Thurman, canceled the agreement. The effect of this interpretation was to add the italicized words to the cancellation provision and say that the agreement was canceled if the farm were sold during the joint lives of the Thurmans or during the life of the survivor.

No such survivorship is indicated in the provision. On the contrary, it means just what it says, that a cancellation is effected if the property is sold "during the life of J. Oscar Thurman and Maria M. Thurman," that is, while both are alive. That such was the intention

of the parties is clearly indicated by the stated purpose of the agreement in a preceding clause, "That J. Oscar Thurman and Maria M. Thurman his wife may continue to live on the said farm," not that either or the survivor may do so.

Since the sale of the farm in May, 1950, did not occur "during the life of J. Oscar Thurman and Maria M. Thurman," the agreement was not thereby canceled and was binding on Thurman at the time of his death.

The claim is made that the appellants were guilty of laches in that they knew during the lifetime of Thurman that he claimed that that the agreement was canceled and that he was released from its obligations by the sale of the property in 1950, and yet the appellants at that time took no steps to protect their interests.

The answer to this contention is that if the conduct and actions of Thurman amounted to an anticipatory breach of the agreement, the appellants had the right to await the time for performance of the agreement by Thurman and bring suit when that time arrived. *Simpson* v. *Scott*, 189 Va. 392, 397, 398, 53 S. E. 2d 21, 23, 24. The breach of the agreement by Thurman occurred when he died without having made in his will the promised provision for the benefit of the Taylor and McMurdo heirs, the appellants.

Since the written agreement was binding on Thurman at the time of his death, it is specifically enforceable against his estate. Accordingly, the decree appealed from is reversed and the cause remanded with direction that the estate of James Oscar Thurman be distributed to the Taylor and McMurdo heirs in accordance with the provisions of the agreement.

*Reversed and remanded.*