JOHN A. ANDREWS, ET AL.

V.

WILLIAM DAVID SAMS

Record No. 831758

March 6, 1987

Present: All the Justices

*John J. Sabourin, Jr. (W. Michael Holm; Hazel, Beckhorn and Hanes*, on briefs), for appellants.
*Craig D. Johnston (Coon & Johnston*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

This is an appeal from a decree sustaining a plea of the statute of limitations, and we must decide when the cause of action alleged in the amended bill of complaint accrued.

The decree was based on the facts as alleged in the bill, the exhibits attached thereto, and the respondent's deposition. Centreville Concrete Corporation was incorporated in October 1977. Complainants John Andrews and his wife Helen owned half the 300 shares of stock, and Thomas C. Conrath owned the other half. Respondent William David Sams served as president and as a member of the board of directors.

In March 1978, Sams threatened to resign and seek employment with a competitor unless he was permitted to acquire an equity interest in the corporation. The Andrews offered to sell Sams 75 shares of their stock and Sams agreed to pay the Andrews $25,000. The parties further agreed that payment would be deferred until some time after the stock had been transferred and that, in light of "other financial considerations", the transfer would be postponed.

On May 22, 1979, the parties met with an attorney, discussed preparation of written documents, and orally agreed upon the terms. Under those terms, the Andrews were required to transfer 75 shares of their stock to Sams; Sams was required to pay the Andrews $25,000; payment was to fall due on January 1, 1983; and the Andrews were given the option of first refusal if Sams decided to sell the stock.

"[B]ased on his discussion with the Andrews and Mr. Sams", the attorney prepared a stock purchase agreement and two promissory notes payable to the Andrews. In one, the principal obligation was $12,666.66 and in the other, $12,333.34. In both, the principal was due January 1, 1983. In July 1979, Sams reviewed

the documents, expressed some concern about the details, and declined to sign. The Andrews asked Sams to discuss his concerns with an attorney and have the documents revised to his satisfaction, but in accordance with their agreement.

"Because of tax considerations, it was advantageous to have Mr. Sams become a stockholder of Centreville in August, 1979", and although the documents had not been revised and executed, the Andrews transferred 75 shares of their stock to Sams on August 1, 1979. The Andrews did not require Sams to execute the documents because Sams "had demonstrated honesty and integrity in his business dealings with the Andrews."

In July 1981, Sams acquired the 150 shares of stock issued to Conrath, and on August 7, 1981, the Andrews demanded that Sams return the 75 shares they had transferred to him or pay the purchase price. Sams refused, denying "that there was ever an agreement under which he was to acquire 75 shares of Centreville stock for the payment of $25,000 to the Andrews."

The documents were never executed, and the Andrews decided to wait to file suit until the payment due date had passed. In their bill of complaint, they alleged "a total and complete failure of consideration" and asked the chancellor to "rescind the contract and enter an order requiring Mr. Sams to transfer the [75] shares of Centreville stock to Mr. Andrews and Mrs. Andrews".

By final decree entered July 29, 1983, the chancellor ruled as follows:

> [T]he statute began to run on or about August 1, 1979, when Plaintiffs transferred the shares of stock in question to Defendant, and from and after that time had the right to demand performance of Defendant's alleged obligation to execute a stock transfer agreement and promissory notes evidencing a $25,000.00 debt, and that the three year period had expired when Plaintiffs filed this action on January 13, 1983 . . . .

Accordingly, the chancellor sustained Sams' plea of the statute of limitations and dismissed the bill of complaint.

The chancellor applied the three-year limitation imposed by Code § 8.01-246(4), and, in oral argument, the parties agreed that "equity follows the law" in cases of this kind. Challenging the chancellor's ruling that the statute of limitations began to run

on August 1, 1979, the Andrews contend that their cause of action did not accrue until January 1, 1983.

In defense of the chancellor's ruling, Sams argues on brief that the bill of complaint acknowledges that "[t]he verbal agreement contemplated . . . the signing of documents drawn by an attorney to make the complex stock purchase agreement and promissory notes enforceable." Sams seems to suggest that a verbal agreement can never become an enforceable contract when the parties contemplate that their agreement is to be evidenced by written documents.

 It is true that "the circumstance that the parties . . . intend a formal contract to be drawn up is strong evidence to show that they did not intend the previous negotiations to amount to an agreement." *Boisseau* v. *Fuller*, 96 Va. 45, 47, 30 S.E. 457 (1898). But such a circumstance merely "creates a presumption that no final contract has been entered into, which requires strong evidence to overcome." *A. C. R. Co.* v. *Robertson's Ex'r*, 135 Va. 247, 253-54, 116 S.E. 476, 478 (1923). The chancellor's ruling left the Andrews no opportunity to introduce evidence to rebut the presumption.

Implicitly acknowledging the sufficiency of the Andrews' allegations of an enforceable oral contract, Sams assumes an alternative position. As he interprets the bill of complaint, "the Andrews had an immediate right to the delivery of signed documents upon transfer of the stock, and the right and cause of action therefore accrued upon transfer of the stock". Consequently, Sams reasons, "they could have filed suit at once to compel execution of the documents".

 We assume Sams has reference to a suit for specific performance. But the Andrews were not required to invoke such a remedy. Having performed their covenant under the oral contract, they were entitled to pursue their remedy for non-performance of the covenant to pay. According to the bill of complaint, the oral contract called for payment on January 1, 1983. The Andrews alleged that Sams repudiated the contract on August 7, 1981. The Andrews had the right to elect whether to pursue a remedy for anticipatory breach at that time or to await breach at the time fixed for performance. *Simpson* v. *Scott*, 189 Va. 392, 53 S.E.2d 21 (1949). When, as alleged in the bill of complaint, the repudiation is absolute, the statute of limitations does not begin to run until the time for performance has passed. *Id.*

■ Nor was the Andrews' remedy for non-performance confined to an action at law for damages.

> To permit [a party to a contract] to retain all the benefits flowing from the contract . . . while relieving it of any burden, would be inequitable . . . . [A] substantial failure of consideration is a well recognized ground for rescission of a contract . . . .

*Southeast Lumber Co.* v. *Friend*, 158 Va. 863, 869, 164 S.E. 372, 374 (1932). In their bill of complaint, the Andrews alleged "a total and complete failure of consideration" and prayed for rescission of the oral contract and a return to the *status quo ante.*

We hold that this cause of action accrued, and the statute of limitations began to run, on January 1, 1983. We will reverse the decree, reinstate the bill of complaint, and remand the cause for further proceedings in accord with our opinion.

*Reversed and remanded.*