# Heirs of Galen M. Roberts

## v.

# Coal Processing Corporation, et al.

Record No. 850225

June 10, 1988

Present: All the Justices

:

*Joseph W. Kaestner (Theodore Tondrowski; Bell, Kaestner & Willett*, on briefs), for appellant.

*Henry S. Keuling-Stout; Leslie M. Mullins (Mullins, Keuling-Stout, Thomason & Harris*, on brief), for appellees.

RUSSELL, J., delivered the opinion of the Court.

This appeal concerns a factual situation which had its inception 114 years ago and arises from an action at law commenced 38 years ago. The sole question is whether the claims of additional plaintiffs, added 23 to 25 years after the action was originally filed, were barred by the statute of limitations. We hold that they were not.

In 1874, Galen M. Roberts owned a 1,000-acre tract of land lying within the present boundaries of Wise and Russell Counties. On September 19, 1874, he executed a "deed of lease," conveying all mineral rights in the tract to parties named Price and Steinman. The lessees were given the right to enter, remove minerals, and build roads and railways. In return, they promised to pay the lessor "ten cents per ton arising from the sale of any Coal or other mineral that may be mined or obtained from the land . . . after the same is sold and the receipts are in the hands of the [lessees]."

Through various assignments, the rights of the original lessees have allegedly passed into the hands of eight corporations and an individual who are the appellees here (hereinafter, collectively, the lessees). No minerals were mined from the property until 1945, but then mining operations began and they have continued to the present time. It is undisputed that the lessees have made no royalty payments under the 1874 lease. The plaintiffs, who are heirs of Galen Roberts, allege that the lessees have extracted coal at the rate of 30,000 tons per month and that they continue to occupy and mine the property, notwithstanding the expiration of the 99-year lease in 1973.

Galen Roberts died intestate in 1891, survived by his widow, Polly, and eleven children: Elizabeth, Emily, Mary, George Washington, Hop, Marion, William, Lexington, Galen, Jr., Samuel, and Ira. The widow and all eleven children were deceased by 1955. On December 22, 1955, twenty children of Ira, William, and George Washington brought this action in the Circuit Court of Wise County for the total amount of the unpaid royalties then due. Their motion for judgment stated that they "sue for themselves and for the benefit of all other heirs of GALEN M. ROBERTS, and their assignees, if any, who have a community of interest and as a CLASS ACTION on behalf of all interested." Six of the present appellees were made parties defendant.

The defendants demurred on the ground, among others, that class actions are impermissible in actions at law in Virginia. In 1958, the court sustained the demurrer and granted the plaintiffs leave to amend. On December 16, 1958, ten of the original plaintiffs filed an amended motion for judgment, making personal claims for unpaid royalties and abandoning their class-action effort. The other ten original plaintiffs, all children of George Washington, were dropped, and an additional plaintiff, a child of Lexington, was added. Thus, eleven plaintiffs remained before the court in 1958. The defendants again demurred on the same grounds, but the court found the amended motion for judgment sufficient and overruled the demurrers in 1959. Soon thereafter, additional defendants were added.

A long period of dormancy ensued. In 1965, a Maryland attorney wrote to the court, seeking to enter an appearance in the case. He stated that some of the suit papers were missing from the clerk's office. Ten years later, in 1975, the same attorney wrote to the clerk enclosing some of the missing papers which, he explained, had been turned over to him by a Virginia attorney, since deceased.

In 1978, all eleven plaintiffs in the 1958 amended motion for judgment were deceased. In April and May, 1978, counsel appeared before the court asking leave to substitute the successors-in-interest of the 1958 plaintiffs, to revive the action in their names, and to add as additional parties plaintiff (hereinafter sometimes called "new plaintiffs") other heirs of Galen Roberts whose claims did not descend through either the twenty 1955 plaintiffs or the eleven 1958 plaintiffs. The court requested counsel

to file lists of the heirs they represented, and such lists were filed between May 1978 and January 1979.

On August 10, 1979, the court ordered the action revived in the names of those heirs who were successors-in-interest to the eleven 1958 plaintiffs. On February 19, 1980, the court also added, as additional parties plaintiff, all other heirs of Galen Roberts who were before the court, but reserved for future determination various defendants' motions to dismiss them. By this time, the new plaintiffs listed by counsel and added by the court numbered over 300.

On October 13, 1983, the defendants moved to dismiss all new plaintiffs on the grounds that they were not proper parties and that their claims were barred by the statute of limitations. On December 28, 1984, the court ruled that such heirs were proper parties plaintiff, but that their claims were barred by the five year limitation provided for written contracts by Code § 8.01-246.2. We granted these new plaintiffs an appeal. The case continues on the docket of the trial court with regard to the claims of the successors-in-interest of the eleven 1958 plaintiffs, and they are not involved in this appeal.

The 1874 lease was a written instrument under seal. All rights of action asserted by the new plaintiffs are based upon it, and all arose before October 1, 1977, the effective date of the repeal of Title 8 of the Code and its replacement by Title 8.01. Code § 8.01-256 provides that the limitation periods existing under the prior law are to continue to govern actions pending as well as rights of action existing on October 1, 1977. Accordingly, the new plaintiffs' rights of action here are governed by the ten-year period prescribed by former Code § 8-13 for actions founded upon written contracts under seal. The five-year limitation prescribed by present Code § 8.01-246.2 is inapplicable.

The new plaintiffs appeared by counsel on various dates between May 1978 and January 1979 and were formally made parties plaintiff on February 19, 1980. Thus, to decide whether their claims are time-barred, we must determine whether their respective rights of action had arisen more than ten years prior to those dates.

The answer to that inquiry depends upon the terms of the contract and the facts alleged in the pleadings. The contract contains no fixed time or schedule of times for performance. Payment was due from lessees to lessors only when (1) coal was sold to

lessees' customers and (2) the proceeds of such sales were "in the hands" of the lessees. The timing of those events was entirely within the lessees' control. They might, if they so elected, wait until the end of the 99-year lease period before becoming obligated to pay the lessors the first royalty payment by arranging to postpone the actual arrival of proceeds into their hands.

The contract provides for no periodic reports or statements to the lessors concerning lessees' receipts, nor does it provide any other means whereby the lessors could know when, or if, the lessees had become indebted to them. The record is devoid of any allegations of notice to the lessors that the lessees had become indebted to them or of any facts from which constructive notice could be inferred.

The 1874 contract, therefore, differs from those providing for payment in installments, due at specified times. It was an entire contract, not a divisible undertaking. *Cf. Virginia Military Institute* v. *King*, 217 Va. 751, 232 S.E.2d 895 (1977) (architect's contract to provide both design services and supervision of construction was divisible).

In the case of an indivisible or entire contract, a party seeking to recover for a breach committed while the contract remained executory, or for an anticipatory breach committed before expiration of the time agreed upon for full and final performance, has the election of pursuing his remedy when the breach occurs, or of awaiting the time fixed by the contract for full and final performance. If he elects the latter course, the statute of limitations does not begin to run against his right of action until the time for final performance fixed by the contract has passed. *Andrews* v. *Sams*, 233 Va. 55, 58, 353 S.E.2d 735, 738 (1987); *County School Bd.* v. *Beiro*, 223 Va. 161, 163, 286 S.E.2d 232, 233 (1982); *Simpson* v. *Scott*, 189 Va. 392, 400, 53 S.E.2d 21, 24 (1949).

We hold that under the provisions of the contract in question here, which fix no particular time for full and final performance, the rights of action of the lessors did not arise, and the statute of limitations did not begin to run against them, until the end of the contract's 99-year term, in 1973. This holding results from the general rule that, ordinarily, the statute of limitations does not begin to run on a claim for breach of an entire contract, which is continuing, executory, or capable of being enforced, until its termination. *Trustee of Broaddus Institute* v. *Siers*, 68 W.Va. 125,

129, 69 S.E. 468, 470 (1910); I H. Wood, Limitation of Actions at 660 (4th Ed. 1916). If the lessors, during the term of the contract, had elected to treat the lessees' nonpayment of royalties as an anticipatory breach and had then demanded payment, a different result might be reached. *See Riverview Land Co. v. Dance*, 98 Va. 239, 244-45, 35 S.E. 720, 722 (1900). But the bar of the statute of limitations is an affirmative defense asserted by the lessees, and they have the burden of both alleging and proving a state of facts which would establish it. They make no such allegations here.

It may be contended that the lessors, including the new plaintiffs, could hardly have been ignorant of the removal of millions of tons of coal from their lands, beginning in 1945, and that they should be charged with such knowledge as to put them on inquiry that royalties might have become due. But the answer to that contention is that, even if the lessors had actual notice of an anticipatory breach of the contract by the lessees, they had the right to elect to await the end of the contract term and then to bring suit. *Taylor v. Wood*, 201 Va. 615, 620, 112 S.E.2d 907, 911 (1960).

Therefore, we conclude that the ten-year statute of limitations, which governs the claims of the new plaintiffs, did not begin to run against their respective rights of action until the end of the term of the lease in 1973. Because all new plaintiffs became parties to this action within ten years after that date, their claims are timely brought. Because the court erred in sustaining the lessees' plea of the statute of limitations, we will reverse the judgment and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*