991 F.2d 790
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John H. PARK, Plaintiff-Appellant,
and
Eric J. Arnott, Plaintiff,
v.
ALCON SURGICAL, INCORPORATED; Alcon Laboratories,
Incorporated, Defendants-Appellees.
 No. 92-1179.
 United States Court of Appeals,
Fourth Circuit.
 Argued: September 28, 1992
Decided: April 15, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, District Judge. (CA-91-729-A)
 ARGUED: Craig Thomas Merritt, CHRISTIAN, BARTON, EPPS, BRENT & CHAPPELL, Richmond, Virginia, for Appellant.
 Craig Crandall Reilly, MURPHY, MCGETTIGAN & WEST, P.C., Alexandria, Virginia, for Appellees.
 E. Ford Stephens, CHRISTIAN, BARTON, EPPS, BRENT & CHAPPELL, Richmond, Virginia; Mikolean Y. Morgan, LONGACRE & WHITE, Arlington, Virginia; Paul F. McCaul, Manhattan Beach, California, for Appellant. V. Bryan Medlock, RICHARDS, MEDLOCK & ANDREWS, Dallas, Texas, for Appellees.
 E.D.Va.
 VACATED.
 Before HAMILTON, Circuit Judge, BUTZNER, Senior Circuit Judge, and TRAXLER, United States District Judge for the District of South Carolina, sitting by designation.
 BUTZNER, Senior Circuit Judge:
 
 OPINION
 
 1
 John H. Park appeals from the district court's grant of summary judgment to Alcon Surgical, Inc., and Alcon Laboratories, Inc. (collectively Alcon). Because genuine issues of material fact exist concerning Alcon's liability and because part of Park's claim survives the statute of limitations, we vacate the district court's judgment and remand the case for further proceedings.
 
 
 2
 * Park disclosed his design for a type of intraocular lens to Cilco in 1981. In a letter to Park, Cilco agreed to manufacture the Park lens and to pay Park five percent of its sales of the lens as a consulting fee. The letter provided that the payments "would start only after total market demand for the product has exceeded one-hundred (100) lenses per month." In addition, the agreement stated that Alcon would pay the fee for Park's "time in actively teaching and demonstrating the usage of this product."
 
 
 3
 Approximately one year after Cilco agreed to manufacture the Park lens, it began to produce and sell an intraocular lens designed by Arnott. Park alleges that Cilco disclosed his intraocular lens design to Arnott and that the Arnott lens embodies the basic concepts of his, the Park, lens. Park became aware of the Arnott lens as early as 1982 and allegedly discussed the similarities of it with his Cilco sales representative but did not take any other action. When Park inquired about sales of both the Park and the Arnott lens in 1983, his Cilco sales representative informed him that they were not very good.
 
 
 4
 In 1986, Cooper purchased Cilco. Cooper continued to operate the intraocular lens business as one of its divisions, CooperVision/Cilco. Two years later, Cooper sold the division to Alcon. Alcon uses the Cilco trademark but operates the lens business as Alcon Surgical, Inc., Cilco brand lenses.
 
 
 5
 Section 1.2 of the Cooper-Alcon purchase agreement provides that Alcon assumes "all of the duties liabilities, obligations, and commitments relating to the Cooper Surgical Business set out on Exhibit C." Subsection (a) of Exhibit C, in turn, states that Alcon assumes those "iabilities of the types and kinds described on the attached schedules ... relating to ... accrued liabilities, other long term liabilities and deferred income." Subsection (b) provides for the assumption of those "iabilities arising from the Material Contracts listed on Schedule 2.14 ... and other contracts relating to the Cooper Surgical Business entered into the ordinary course in the operation of the assets of the Cooper Surgical Business that are too small to be listed on Schedule 2.14." The contract provided for adjustments to the purchase price for miscellaneous liabilities.
 
 
 6
 Schedule 2.14 lists the material contracts for which Alcon assumed liability. Although several royalty and consulting agreements appear on the list, the Park-Cilco contract does not. In addition to Schedule 2.14, an analysis of the accrued liabilities assumed by Alcon was attached to Exhibit C. It also included liabilities on consulting and royalty contracts, but like Schedule 2.14, it did not mention the ParkCilco contract.
 
 
 7
 In 1989, Park asked Alcon for an accounting of sales of those lenses that embody the Park concept. Alcon denied the request, disclaimed any liability to Park on the letter agreement, and informed Park that his lens had been discontinued after limited sales.
 
 
 8
 In 1991, Arnott sued Alcon for breach of contract and patent infringement in federal district court in the Eastern District of Virginia. Several months later, Park intervened in the suit and asserted claims against both Arnott and Alcon. The district court allowed Park to intervene, and it subsequently severed Park's claims against Alcon.
 
 
 9
 In his complaint against Alcon, Park alleged that because the Arnott lens embodies his ideas for the Park lens, sales of 100 or more Arnott lenses a month entitle him to payments under his 1981 contract with Cilco. He alleged that the failure of Cilco, Cooper, and Alcon to pay the five-percent royalties upon sales of over 100 Arnott lenses breached that agreement. Alcon, Park asserted, assumed liability for this claim when it bought Cooper's intraocular lens business.
 
 
 10
 The district court granted Alcon's motion for summary judgment. It ruled that Alcon had not assumed liability for the Park-Cilco agreement. In addition, even if Alcon did assume liability for the contract, the court held, the statute of limitations barred the action.
 
 
 11
 Alcon disclaims liability for an additional reason. According to Alcon, Park produced no evidence showing that it had performed the conditions precedent to receipt of the royalties. Summary judgment, therefore, was proper. This claim will not be considered because it was not the basis of the district court's decision, and the parties did not develop an evidentiary record about it.
 
 II
 
 12
 At trial Park would bear the burden of proof that Alcon assumed liability for the Park-Cilco agreement. On motion for summary judgment, therefore, Alcon could meet its initial burden of proof by showing that Park's evidence was insufficient to support an essential part of that claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Then the burden would shift to Park to show the existence of triable issues. If Park could not produce evidence sufficient to show a genuine issue of material fact concerning an essential element of his claim, summary judgment for Alcon would be proper. Celotex Corp., 477 U.S. at 324; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).
 
 
 13
 Alcon and Park both pointed to the terms of the Cooper-Alcon purchase agreement to support their respective positions on the assumption of liability issue. Viewing the facts concerning the contract in the light most favorable to Park, however, reveals that Park met his burden of proof as the nonmovant. It is true that the Park-Cilco contract is not mentioned by name anywhere in the Cooper-Alcon purchase agreement. Nevertheless, a copy of the Park-Cilco contract was retained in Alcon's files. Whether that contract was of the "types and kinds" referred to in Exhibit C, or whether it was formed in the ordinary course of business and was considered "too small to be listed" on Schedule 2.14, raise genuine issues of material fact.
 
 
 14
 Every term of the Cooper-Alcon purchase agreement must be considered to ascertain the intent of these parties. It would have been possible for Cooper and Alcon to have listed all consulting and royalty contracts in Exhibit C and Schedule 2.14. The parties, however, specified contracts which were of the "types and kinds" of those listed or that were "too small to be listed," and they provided for adjustments to accommodate miscellaneous liabilities. These facts demonstrate that Cooper and Alcon intended that their transaction did not necessarily exclude contracts that were not expressly identified by name. Whether Park's contract was included in the Cooper-Alcon transaction cannot be decided by summary judgment; it presents a question for the jury.
 
 
 15
 Quite apart from his reliance on the provisions of the CooperAlcon contract which we have addressed, Park relies on alternative grounds for imposing liability on Alcon. We find no merit in the alternative claim that under New York law, which governs the CooperAlcon contract, Alcon is liable by implication as a successor to Cooper. In their contract, Cooper and Alcon expressly provided that Alcon was not a successor to Cooper. Alcon did not purchase all of Cooper's assets or assume all of its liabilities. The companies did not merge; Cooper sold only its intraocular lens division. There is no contention that the transaction defrauded Cooper's creditors. Under these circumstances, New York law would not impose liability on Alcon by implication. See Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc., 775 F.2d 38, 42 (2d Cir. 1985); Diaz v. South Bend Lathe, Inc., 707 F. Supp. 97, 99-100 (E.D.N.Y. 1989); Lumbard v. Maglia, Inc., 621 F. Supp. 1529, 1534-36 (S.D.N.Y. 1985); Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 244, 464 N.Y.S.2d 437, 440, 451 N.E.2d 195, 198 (N.Y. 1983).
 
 III
 
 16
 Virginia, as the forum state, provides the pertinent statute of limitations in the absence of a shorter New York statute. See Va. Code § 8.01-247. In Virginia, the statute of limitations for an action based on breach of a written contract is five years from the date of accrual. Va. Code Ann. § 8.01-246. A cause of action for breach of a contract or duty accrues on the date of breach. Va. Code Ann.s 8.01-230. Virginia recognizes that multiple breaches or occurrences can give rise to separate causes of action. See Hoey v. Dexel Systems Corp., 716 F. Supp. 222 (E.D. Va. 1989). The Supreme Court of Virginia explained the application of the statute of limitations to situations giving rise to multiple, separate breaches of duty, as follows:
 
 
 17
 If the wrongful act is of a permanent nature and one that produces all the damage which can ever result from it, [then] the entire damages must be recovered in one action, and the statute of limitations begins to run from the date of the wrongful act. Conversely, when wrongful acts are not continuous but occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action. In the latter situation, a plaintiff's right of recovery ... is limited by the statute to the damages sustained during the five years immediately preceding the institution of [the] suit.
 
 
 18
 Hampton Roads Sanitation Dist. v. McDonnell, 234 Va. 235, 239, 360 S.E.2d 841, 843-44 (1987) (citations and quotation marks omitted). Hampton dealt with trespass, but the same principle applies to contracts. See Burns v. Board of Supervisors, 227 Va. 354, 357 and 364, 315 S.E.2d 856, 858 and 862 (1984).
 
 
 19
 Westminster Investing Corp. v. Lamps Unlimited, Inc., 237 Va. 543, 379 S.E.2d 316 (1989), on which Alcon primarily relies, is not contrary to Hampton and Burns. In Westminster, a landlord made oral representations, but the lease which the parties subsequently executed did not conform to the representations. For seven years, the landlord failed to enforce the oral representations. Rejecting the tenants' claim of multiple breaches, the Supreme Court held that the statute of limitations accrued when the term of the lease began; the tenant knew at that time that the landlord had not complied with its representations. Contrary to Alcon's argument, Westminster does not establish that Virginia rejects the application of the statute of limitations to multiple occurrences. The facts in Westminster support only a single breach.
 
 
 20
 Since the statute of limitations is an affirmative defense, Alcon has the burden of proving facts that bar Park's claim. Heirs of Roberts v. Coal Processing Corp., 235 Va. 556, 562, 369 S.E.2d 188, 190 (1988). On this record, Alcon has not carried its burden. Even if Cilco failed to pay Park in 1982 or 1983, Park's claim for payment is not barred with respect to sales made during the five years preceding the institution of his suit. Hampton, 234 Va. at 239, 360 S.E.2d at 843-44.
 
 
 21
 An obligee's renunciation of the contract results in accrual of the cause of action, starting the statute of limitations to run. Riverview Land Co. v. Dance, 98 Va. 239, 244-45, 35 S.E. 720, 722 (1900). Alcon's 1989 refusal to pay Park was a renunciation, but Park instituted suit within five years, so this renunciation did not invoke the bar of limitations. Alcon's claim that a renunciation occurred in 1982 or 1983 raises factual issues that render summary judgment inappropriate.
 
 
 22
 The judgment of the district court is vacated, and the case is remanded for further proceedings. Park shall recover his costs.
 
 VACATED AND REMANDED