**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1499**

ALLEN F. JOHNSON & ASSOCIATES, LLC,

            Plaintiff – Appellant,

      v.

PORT SECURITY INTERNATIONAL, LLC,

            Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:08-cv-00593-TSE-TCB)

Argued:  March 25, 2011                    Decided:  May 13, 2011

Before MOTZ, GREGORY, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.  Judge Motz wrote a dissenting opinion.

**ARGUED:** Richard Daniel Kelley, REED SMITH, LLP, Falls Church, Virginia, for Appellant.  Thomas Kerns McKnight, THOMAS KERNS MCKNIGHT, PLLC, Washington, D.C., for Appellee.  **ON BRIEF:** Michael S. Dingman, Robert M. Diamond, REED SMITH, LLP, Falls Church, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a bench trial, the district court awarded Allen F. Johnson & Associates, LLC (AFJ) $230,400 in its breach of contract action against Port Security International, LLC (PSI) but denied AFJ's request for declaratory relief. AFJ appeals the district court's ruling denying declaratory relief and, for the following reasons, we affirm.

I.

On January 5, 2006, AFJ entered into a consulting agreement with PSI, under which AFJ agreed to help market PSI's cargo scanning business to ports in Guatemala and other Central American countries.[1] The Agreement provided that, in the event PSI signed a contract for its services with a governmental entity in Central America, PSI would:

> Pay to the Consultant, as per the provisions herein, a commission of 20% on the fees collected for incoming and outgoing containers by the Principal under the agreement for the duration of the contract and its renewals, net of any Guatemalan or Central American taxes.

(JA at 28).

---

[1] Prior to signing the Agreement, PSI had unsuccessfully attempted to market its services in Guatemala for several years. AFJ came to PSI's attention because AFJ's namesake, Allen Johnson, was one of the United States' chief negotiators on the Central American Free Trade Agreement.

2

"Payments" under the Agreement "shall only become due when the Principal or an affiliate of the Principal has been paid by the customer." (JA at 28). The Agreement also provided that the remuneration provisions would survive termination of the Agreement.

In November 2006, PSI entered into a ten-year contract with Compania Bananera Guatemalteca Independiente, S.A. ("Cobigua"), the operators of the Guatemalan port of Puerto Barrios, for PSI to handle cargo inspection at the port (the "Cobigua Contract"). The Cobigua Contract is extendable by agreement of the parties. Although AFJ assisted in securing the contract, PSI refused to pay AFJ 20% as provided by the Agreement and instead placed 10% of the money received from Cobigua in escrow to entice AFJ into a renegotiation of their commission.

In response, AFJ filed this diversity action, seeking damages for breach of contract, a declaratory judgment with regards to the rights and responsibilities of the parties, and, in the alternative, quantum meruit damages. AFJ initially claimed $2,500,000 in damages for breach, but later requested only $207,200 — the actual amount it alleged PSI owed at the time of the action. After the district court denied cross-motions for summary judgment, the case proceeded to a bench trial. After trial, the district court found that the Cobigua Contract is within the Agreement, that AFJ is entitled to 20% of

Cobigua's payments to PSI, and that PSI breached the contract by failing to pay AFJ. Upon finding that PSI breached the contract, the district court dismissed the quantum meruit claim.

The district court then turned to the declaratory judgment claim. The court first noted that AFJ initially sued for a much greater amount, before later informing the court that suing for damages for the entire life of the contract would be too speculative and that it would instead seek a declaratory judgment allowing it to sue for damages on future breaches. The court concluded that AFJ had a right to sue for all of the payments under the Agreement in the current action, and that future damages were not too speculative. It explained that Virginia law would not "sanction eating this piece of pie bite by bite for the next ten years, or five years." (JA at 395). Accordingly, the court awarded AFJ damages in the amount of $230,400—the value of the missed payments, including prejudgment interest—but denied the requested declaratory relief. AFJ filed a Rule 59(e) motion challenging the district court's denial of its declaratory judgment, which the district court denied. This appeal followed.

II.

On appeal, AFJ contends that the district court erred in resolving its declaratory judgment claim. In denying that

4

request, the district court found that, because the Agreement is an indivisible contract, not an installment contract, AFJ is required to sue on the entire contract and could not bring successive actions for future breaches of the Agreement.

A.

"Under Virginia law, rights of action generally do not arise upon future periodic obligations until they are due, even though there has been a default in the performance of one of the earlier periodic obligations." Wiglesworth v. Taylor, 391 S.E.2d 299, 303 (Va. 1990). However, if a contract is represented by "one single and indivisible contract and the breach gives rise to one single cause of action, it cannot be split into distinct parts and separate actions maintained for each." Jones v. Morris Plan Bank, 191 S.E. 608, 609 (Va. 1937). A rule of thumb for deciding whether a contract is divisible or indivisible is that "[i]f the same evidence will support both actions there is but one cause of action." Id. at 610. In Jones, the Supreme Court of Virginia set forth the general rule that an installment contract is considered divisible unless there is an acceleration clause. See id.

The district court determined that the Agreement is not an installment contract, but rather is an indivisible contract, relying on Heirs of Roberts v. Coal Processing Corp., 369 S.E.2d

5

188 (Va. 1988).[2]  In Roberts, a landowner leased the mineral rights in his land to a coal company in exchange for royalty payments.  The royalty payments were due "when (1) the coal was sold to lessees' customers and (2) the proceeds of such sales were 'in the hands' of the lessees."  Id. at 190.  The Supreme Court held that the contract was indivisible because the contract "provides for no periodic reports or statements to the lessors concerning lessees' receipts, nor does it provide any other means whereby the lessors could know when, or if, the lessees had become indebted to them."  Id.  The Roberts Court further explained that the contract differed from an installment contract where payments were due at specified times because it "contains no fixed time or schedule of times for performance" and the coal company could have "arrang[ed] to postpone the actual arrival of proceeds into their hands."  Id.  Thus, the Roberts Court characterized the lease agreement as "executory" because the decision to sell the coal, and therefore trigger the lease's payment provision, rested entirely in the hands of the coal company. See id.

The district court applied Roberts to conclude that, because PSI's payments to AFJ under the Agreement were not due

_____

[2]  Inexplicably, AFJ's brief includes no discussion of Roberts although it is the principal case relied on by the district court in denying AFJ's requested relief.

6

at specified times and were tied to PSI's actions in obtaining a contract with a third party, the Agreement is indivisible. Thus, the district court noted that AFJ had the right to sue for the entire amount of the contract when it brought the action, and that determining the amount of future damages is a common practice and not a reason to declare the contract divisible. See Roberts, 369 S.E.2d at 190 (noting that "[i]n the case of an indivisible" contract, plaintiff "has the election of pursuing his remedy when the breach occurs, or of awaiting the time fixed by the contract for full and final performance").

## B.

We agree with the district court that, under Roberts, the Agreement is indivisible and AFJ is not entitled to its requested declaratory relief. On appeal, AFJ restates its position below that the Agreement is an installment contract and that its future damages were too speculative to pursue. AFJ's damages, however, are no more speculative than the landowner's damages in Roberts would have been had he sued immediately upon the coal company's failure to pay royalties. Likewise, AFJ is correct that an installment contract can give rise to multiple lawsuits. AFJ simply has failed to address the district court's conclusion that, under Roberts, the Agreement is not an installment contract. Like the contract examined in Roberts, the Agreement does not specify a timeframe for specific

7

payments, but rather ties payment to when PSI actually collects money from a third party—Cobigua.[3] Thus, like the coal company in Roberts, PSI could have agreed with Cobigua to take a lump sum payment at the end of the ten-year agreement. Although perhaps farfetched, this scenario highlights the fact that the "timing" of the payment is "entirely within [PSI's] control." Roberts, 369 S.E.2d at 190.

The Supreme Court of Virginia, in Roberts, has already held that a contract like the consulting agreement in this case is an indivisible contract, not an installment contract. Settled Virginia law provides that a party may not split an indivisible contract into multiple suits. Flora, Flora & Montague, Inc. v. Saunders, 367 S.E.2d 493, 495 (Va. 1988) ("A claim arising from an indivisible contract cannot be split and made the subject of separate actions.").

---

[3] We also agree with the district court that the fact that the Cobigua Contract between PSI and Cobigua provides for monthly installment payments to PSI does not transform the Agreement into an installment contract. The Roberts Court focused on the fact that the "timing" of the payments to lessees was "entirely" within their control. 369 S.E.2d at 190. How the lessees exercised that timing was simply not relevant to determining whether the underlying lease was divisible.

III.

For the foregoing reasons, we affirm the denial of AFJ's request for declaratory relief.

<u>AFFIRMED</u>

DIANA GRIBBON MOTZ, Circuit Judge, dissenting:

With respect, I dissent. In my view, the district court erred in characterizing AFJ's request for declaratory relief as impermissible claim-splitting.

Virginia law forbids a plaintiff from splitting a claim "into distinct parts" and maintaining "separate actions" if a "transaction is represented by one single and indivisible contract and the breach gives rise to one single cause of action." Jones v. Morris Plan Bank of Portsmouth, 168 Va. 284, 290 (1937). Only if "the same evidence will support" all actions is there "one cause of action." Id. at 291. Here, "the same evidence" cannot support actions for each breach of the consulting agreement, and so there is not "one cause of action."

Rather, AFJ's remuneration under the consulting agreement rests on evidence as to factors that may well vary each month. That remuneration turns on the amount and timing of Cobigua's payments to PSI, JA 28, and the Cobigua Contract renders those payments contingent on a host of factors, including the number of containers screened per month, the promptness of Cobigua's payment, and Cobigua's potential renewal of the contract beyond the 10-year initial period. JA 100-101. The first variable -- number of containers screened -- seems particularly dependent on a number of unforeseeable economic and geopolitical factors. Thus, while claims for present and future damages share a common

10

factual foundation, e.g. that AFJ helped PSI secure the Cobigua Contract and that the parties intended the agreement to cover Puerto Barrios screenings, the damages calculations turn on entirely different facts.

The differences in the causes of action here demonstrate the rationale for Virginia's general rule that a contract "to pay money in installments is divisible in its nature." Jones, 168 Va. at 292 (internal quotation omitted). Indeed, "rights of action generally do not arise upon future periodic obligations until they are due, even though there has been a default in the performance of one of the earlier periodic obligations." Wiglesworth v. Taylor, 239 Va. 603, 607 (1990). PSI assumed such "periodic" obligations to AFJ, and those obligations differ even more than do those under other types of divisible installment contracts. Cf. tenBraak v. Waffle Shops, Inc., 542 F.2d 919, 924 n.6 (4th Cir. 1976) (rent).

Furthermore, the structure of the consulting agreement here demonstrates its divisibleness. See Shelton v. Stewart, 193 Va. 162, 167 (1951) ("the question of whether a contract is entire or severable is one of intention, to be determined from the language . . . and the subject matter of the agreement" (internal quotation omitted)). The remuneration provision states that "payments shall only become due when [PSI] has been paid by the customer." JA 28. The use of the plural "payments"

11

suggests that the provision contemplates multiple and separate payments, with each only becoming calculable after PSI "has been paid by the customer." Id. The agreement's severability clause also proclaims the parties' intent that each provision stand independently from the rest. JA 30; cf. Shelton, 193 Va. at 167 ("a contract is entire when . . . it contemplates and intends that each and all of its parts . . . shall be common each to the other and interdependent" (internal quotation omitted)).

Because of the contract's structure, a single breach is not "of a permanent nature" such that it "produces all the damage which can ever result from it." Hampton Roads Sanitation Dist. v. McDonnell, 234 Va. 235, 239 (1987) (internal quotation omitted). Instead, PSI's missed payments "occur only at intervals" and "each occurrence inflicts a new injury." Id. Indeed, AFJ persuasively argues that Virginia law bars any attempt here to anticipate and calculate future damages; the dependency of the damages on unpredictable future factors renders them impermissibly "contingent, speculative, and uncertain." Crist v. Metropolitan Mortg. Fund, Inc., 231 Va. 190, 195 (1986). Accordingly, each breach should be treated as a new injury, subject to recovery at the time of that breach.

In holding to the contrary, my friends in the majority and the district court principally rely on Heirs of Roberts v. Coal Processing Corp., 235 Va. 556 (1988). In that case, Roberts

12

conveyed mineral rights in his land to two lessees, who received the right to enter and mine minerals in exchange for a promise to pay Roberts "ten cents per ton arising from the sale of any Coal or other mineral that may be mined or obtained from the land . . . after the same is sold and the receipts are in the hands of the [lessees]." Id. at 556. The court held that contract indivisible because it "contains no fixed time or schedule of times for performance." Id. at 560. Since payment depended on "the proceeds of such sales [being] 'in the hands' of the lessees," an event resting "entirely within the lessees' control," the court noted that the lessees could delay any obligation to pay Roberts by simply "postpon[ing] the actual arrival of proceeds into their hands." Id. at 561. For this reason, the court distinguished the contract in Roberts from those "providing for payment in installments, due at specified times" and ruled that it qualified as an "entire contract." Id.

This case critically differs from Roberts. For although the consulting agreement itself does not fix exact dates for the payment of commissions, it requires that PSI pay commissions when PSI "has been paid by the customer" under the Cobigua Contract. JA 28. The Cobigua Contract in turn establishes a fixed schedule for payments to PSI, requiring Cobigua to make a payment "[a]t the end of each month." JA 100. The consulting agreement therefore provides that AFJ's commissions become "due"

13

after Cobigua makes its underlying payments -- no later than the end of each month.  JA 28; see VMI v. King, 217 Va. 759 (1977) (cause of action accrues once plaintiff has a "right to demand and receive[] payment").  And unlike the lessees in Roberts, PSI cannot manipulate Cobigua's payments so as to nullify its present obligation to AFJ, because the Cobigua Contract provides for automatic payment "without demand" from PSI.  JA 100.  In other words, given that the consulting agreement takes on the Cobigua Contract's fixed schedule, it becomes an installment contract that Virginia law treats as divisible.*

In sum, permitting separate claims here would not subject PSI to repetitive "vexatious litigation," Jones, 168 Va. at 292,

---

* In addition, I note that Roberts analyzes a contract's divisibility in the context of the statute of limitations.  Id. at 561-62.  There, the court's holding benefited the plaintiffs, because their cause of action did not accrue until the expiration of the contract term.  Id.  But here the district court's ruling severely prejudices the plaintiff, because it deprives AFJ of any remedy for PSI's ongoing breach of the consulting agreement.  The Roberts reasoning, articulated in a context in which the equities lined up differently, may not necessarily apply in the present context.  After all, Virginia's claim-splitting rule constitutes a "rule of justice, not to be classed among technicalities" and an "equitable interposition of the courts [made for] reasons of public policy."  Jones, 168 Va. at 292 (internal quotation omitted).  The district court's "equitable interposition" seems misplaced here, because AFJ has extracted no prejudicial advantage by suing for compensatory damages now and future damages later.  See Pollard & Bagby, Inc. v. Morton G. Thalhimer, Inc., 169 Va. 529, 536 (1938) (noting that the election of remedies rule aims to prevent the plaintiff from "gain[ing] an advantage" or forcing the defendant to "suffer[] a disadvantage").

14

nor would it permit AFJ to extract an undeserved double recovery. Cf. X-It Products, L.L.C v. Walter Kidde Portable Equipment, Inc., 227 F. Supp. 2d 494, 524 (E.D. Va. 2002). Accordingly, in my view, the majority, like the district court, errs in applying the equitable bar on claim-splitting in this case.

Since the district court premised its order denying declaratory relief solely on an incorrect legal conclusion, we should vacate that order and remand to the district court to determine whether to exercise its jurisdiction to award declaratory relief. See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007); White v. Nat'l Union Fire Ins. Co., 913 F.2d 165 (4th Cir. 1990). In doing so, we should hold that the claim-splitting doctrine does not provide a good reason for refusing declaratory relief.