Affirmed by unpublished PER CURIAM opinion. Judge MOTZ wrote a dissenting opinion.
Unpublished opinions are not binding precedent in this circuit.
PER CURIAM:
Following a bench trial, the district court awarded Allen F. Johnson & Associates, LLC (AFJ) $230,400 in its breach of contract action against Port Security International, LLC (PSI) but denied AFJ’s request for declaratory relief. AFJ appeals the district court’s ruling denying declaratory relief and, for the following reasons, we affirm.
I.
On January 5, 2006, AFJ entered into a consulting agreement with PSI, under which AFJ agreed to help market PSI’s cargo scanning business to ports in Guatemala and other Central American countries.[1] The Agreement provided that, in the event PSI signed a contract for its services with a governmental entity in Central America, PSI would:
Pay to the Consultant, as per the provisions herein, a commission of 20% on the fees collected for incoming and outgoing containers by the Principal under the agreement for the duration of the contract and its renewals, net of any Guatemalan or Central American taxes.
(JA at 28).
“Payments” under the Agreement “shall only become due when the Principal or an affiliate of the Principal has been paid by the customer.” (JA at 28). The Agreement also provided that the remuneration provisions would survive termination of the Agreement.
In November 2006, PSI entered into a ten-year contract with Compania Bananera Guatemalteca Independiente, S.A. (“Cobigua”), the operators of the Guatemalan port of Puerto Barrios, for PSI to handle cargo inspection at the port (the “Cobigua Contract”). The Cobigua Contract is extendable by agreement of the parties. Although AFJ assisted in securing the contract, PSI refused to pay AFJ 20% as provided by the Agreement and instead placed 10% of the money received from Cobigua in escrow to entice AFJ into a renegotiation of their commission.
*283 In response, AFJ filed this diversity action, seeking damages for breach of contract, a declaratory judgment with regards to the rights and responsibilities of the parties, and, in the alternative, quantum meruit damages. AFJ initially claimed $2,500,000 in damages for breach, but later requested only $207,200 — the actual amount it alleged PSI owed at the time of the action. After the district court denied cross-motions for summary judgment, the case proceeded to a bench trial. After trial, the district court found that the Cobigua Contract is within the Agreement, that AFJ is entitled to 20% of Cobigua’s payments to PSI, and that PSI breached the contract by failing to pay AFJ. Upon finding that PSI breached the contract, the district court dismissed the quantum meruit claim.
The district court then turned to the declaratory judgment claim. The court first noted that AFJ initially sued for a much greater amount, before later informing the court that suing for damages for the entire life of the contract would be too speculative and that it would instead seek a declaratory judgment allowing it to sue for damages on future breaches. The court concluded that AFJ had a right to sue for all of the payments under the Agreement in the current action, and that future damages were not too speculative. It explained that Virginia law would not “sanction eating this piece of pie bite by bite for the next ten years, or five years.” (JA at 395). Accordingly, the court awarded AFJ damages in the amount of $230,-400-the value of the missed payments, including prejudgment interest-but denied the requested declaratory relief. AFJ filed a Rule 59(e) motion challenging the district court’s denial of its declaratory judgment, which the district court denied. This appeal followed.
II.
On appeal, AFJ contends that the district court erred in resolving its declaratory judgment claim. In denying that request, the district court found that, because the Agreement is an indivisible contract, not an installment contract, AFJ is required to sue on the entire contract and could not bring successive actions for future breaches of the Agreement.
A.
“Under Virginia law, rights of action generally do not arise upon future periodic obligations until they are due, even though there has been a default in the performance of one of the earlier periodic obligations.” Wiglesworth v. Taylor, 239 Va. 603, 391 S.E.2d 299, 303 (1990). However, if a contract is represented by “one single and indivisible contract and the breach gives rise to one single cause of action, it cannot be split into distinct parts and separate actions maintained for each.” Jones v. Morris Plan Bank, 168 Va. 284, 191 S.E. 608, 609 (1937). A rule of thumb for deciding whether a contract is divisible or indivisible is that “[i]f the same evidence will support both actions there is but one cause of action.” Id. at 610. In Jones, the Supreme Court of Virginia set forth the general rule that an installment contract is considered divisible unless there is an acceleration clause. See id.
The district court determined that the Agreement is not an installment contract, but rather is an indivisible contract, relying on Heirs of Roberts v. Coal Processing Corp., 235 Va. 556, 369 S.E.2d 188 (1988).[2] *284 In Roberts, a landowner leased the mineral rights in his land to a coal company in exchange for royalty payments. The royalty payments were due “when (1) the coal was sold to lessees’ customers and (2) the proceeds of such sales were ‘in the hands’ of the lessees.” Id. at 190. The Supreme Court held that the contract was indivisible because the contract “provides for no periodic reports or statements to the lessors concerning lessees’ receipts, nor does it provide any other means whereby the lessors could know when, or if, the lessees had become indebted to them.” Id. The Roberts Court further explained that the contract differed from an installment contract where payments were due at specified times because it “contains no fixed time or schedule of times for performance” and the coal company could have “arrang[ed] to postpone the actual arrival of proceeds into their hands.” Id. Thus, the Roberts Court characterized the lease agreement as “executory” because the decision to sell the coal, and therefore trigger the lease’s payment provision, rested entirely in the hands of the coal company. See id.
The district court applied Roberts to conclude that, because PSI’s payments to AFJ under the Agreement were not due at specified times and were tied to PSI’s actions in obtaining a contract with a third party, the Agreement is indivisible. Thus, the district court noted that AFJ had the right to sue for the entire amount of the contract when it brought the action, and that determining the amount of future damages is a common practice and not a reason to declare the contract divisible. See Roberts, 369 S.E.2d at 190 (noting that
“[i]n the case of an indivisible” contract, plaintiff “has the election of pursuing his remedy when the breach occurs, or of awaiting the time fixed by the contract for full and final performance”).
B.
We agree with the district court that, under Roberts, the Agreement is indivisible and AFJ is not entitled to its requested declaratory relief. On appeal, AFJ restates its position below that the Agreement is an installment contract and that its future damages were too speculative to pursue. AFJ’s damages, however, are no more speculative than the landowner’s damages in Roberts would have been had he sued immediately upon the coal company’s failure to pay royalties. Likewise, AFJ is correct that an installment contract can give rise to multiple lawsuits. AFJ simply has failed to address the district court’s conclusion that, under Roberts, the Agreement is not an installment contract. Like the contract examined in Roberts, the Agreement does not specify a timeframe for specific payments, but rather ties payment to when PSI actually collects money from a third party-Cobigua.[3] Thus, like the coal company in Roberts, PSI could have agreed with Cobigua to take a lump sum payment at the end of the ten-year agreement. Although perhaps farfetched, this scenario highlights the fact that the “timing” of the payment is “entirely within [PSI’s] control.” Roberts, 369 S.E.2d at 190.
The Supreme Court of Virginia, in RobeHs, has already held that a contract like the consulting agreement in this case is an *285 indivisible contract, not an installment contract. Settled Virginia law provides that a party may not split an indivisible contract into multiple suits. Flora, Flora & Montague, Inc. v. Saunders, 235 Va. 306, 367 S.E.2d 493, 495 (1988) (“A claim arising from an indivisible contract cannot be split and made the subject of separate actions.”).
III.
For the foregoing reasons, we affirm the denial of AFJ’s request for declaratory relief.

AFFIRMED.

. Prior to signing the Agreement, PSI had unsuccessfully attempted to market its services in Guatemala for several years. AFJ came to PSI's attention because AFJ’s namesake, Allen Johnson, was one of the United States’ chief negotiators on the Central American Free Trade Agreement.

. Inexplicably, AFJ’s brief includes no discussion of Roberts although it is the principal case relied on by the district court in denying AFJ’s requested relief.

. We also agree with the district court that the fact that the Cobigua Contract between PSI and Cobigua provides for monthly installment payments to PSI does not transform the Agreement into an installment contract. The Roberts Court focused on the fact that the “timing” of the payments to lessees was "entirely” within their control. 369 S.E.2d at 190. How the lessees exercised that timing was simply not relevant to determining whether the underlying lease was divisible.